**MILLERS' INDEMNITY UNDERWRITERS v. COOK et al. (No. 6528.)**

(Court of Civil Appeals of Texas. San Antonio. March 23, 1921. Rehearing Denied April 13, 1921.)

Master and servant ⟨key⟩361—Corporate officer and manager receiving "salary" held not an "employé" within Compensation Act; "wages."

Under Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—82), defining "employés," and article 5246—83, providing that the officers and directors of a corporation are not deemed employés, a stockholder, who was the general manager, director, secretary, and treasurer of the employer corporation for a monthly "salary," is not entitled to compensation, though, as part of his duties as general manager, he occasionally performed the work of a laborer in the plant, and was injured while so doing, the language of the statute, which uses the word "wages," signifying compensation for mechanical or menial labor, and not the word "salary," which has reference to employment above the grade of such labor, showing an intention to exclude corporate officers even before the amendment of 1917.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Employé; Salary; Wages.]

Appeal from District Court, Bastrop County; R. J. Alexander, Judge.

Action by the Millers' Indemnity Underwriters against H. W. Cook and others to set aside an award made by the Industrial Accident Board under the Workmen's Compensation Law. Judgment sustaining the award, and plaintiff appeals. Reversed and award set aside.

E. C. Gaines, of Austin, for appellant.

Page & Jones, of Bastrop, for appellees.

FLY, C. J. This is an action by appellant to set aside an award made by an Industrial Accident Board under the provisions of the Workmen's Compensation Law of Texas (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91), and based on a claim by H. W. Cook for compensation for the loss of his left arm while in the service of the Smithville Gin Company. This suit was brought against H. W. Cook, the Faulkenburg & Czichos Drug Company, Dr. W. R. Curham, and Page & Jones. The award by the board was for $11.21 a week for 200 weeks to Cook, beginning October 11, 1919, less credit for any sums theretofore paid, also for $372.10, amount paid by Cook for hospital and medical treatment, to Dr. Curham $65 for medical attention, to the Drug Company $4.85 for drugs, and to Page & Jones, attorneys, the sum of 15 per cent. of first $1,000, and 10 per cent. of all amounts above that sum paid on the award. The trial court gave judgment to the appellees for amounts awarded by the board.

The agreed statement of the facts shows that the Smithville Gin Company held a policy of insurance with appellant, and that all the requirements of the Workmen's Compensation Law had been fully complied with. Through the policy of insurance appellant promised and became liable to any employé of the gin company injured by accident, in course of employment, for the compensation provided for by the law in question. H. W. Cook, on October 3, 1919, while attempting to start the cotton into the bale press, had his left arm caught and pulled between two rolls, and was so injured that amputation became necessary and took place. The gin company is a corporation, Cook owning one-third of the stock, valued at $6,666.66, and was a director and secretary-treasurer, as well as general manager or superintendent, "and had full charge of everything pertaining to the management of said gin, and took the place and did the work of any absent employé, and had authority to and did employ, pay off and discharge labor." Cook's salary or compensation for the time from October 3, 1918, to March 1, 1919, was $62.50 per month, and from the last date up to and including October 3, 1919, the day of the accident, was $100 per month. According to the statement of facts:

"The duties of the said H. W. Cook were those of director, secretary, treasurer and general manager, and under his duties as such general manager he was to see that the plant was kept in repair and running order, to purchase and pay for material and supplies, see that customers were properly waited on, and, when occasion required it, he was to personally assist in any repairing or other work that required extra or temporary help in order to keep the gin going, and it was his duty, and he did perform the duty, of taking the place of any absent employé and doing his work, making of himself a hand whenever the occasion required. Said H. W. Cook received no salary by virtue of his being a director and secretary and treasurer of said gin company, but the salary received by said H. W. Cook was for labor performed in and about said gin under circumstances as above herein set forth. Said H. W. Cook had authority to and had in fact always employed, contracted for, paid and discharged labor in and about the gin. The salary drawn by H. W. Cook was by virtue of a contract of hire with said Smithville Gin Company."

After making provision for compensation for injured employés, the statute provides that the employés referred to "shall mean every person in the service of another under any contract of hire, expressed or implied, oral or written, except masters of or seamen on vessels engaged in interstate or foreign commerce, and except one whose employment is not in the usual course of trade, business, profession or occupation of his employer." Article 5246—82. Another exception to or withdrawal from that definition is made in article 5246—83 as follows:

"The president, vice president or vice presidents, secretary or other officers thereof provided in its charter or by-laws and the directors of any corporation which is a subscriber to this act shall not be deemed or held to be an employé within the meaning of that term as defined in the preceding section hereof."

That is, the officers named, although in the service of another, under a contract of hire, express or implied, oral or written, shall not be deemed employés under the Compensation Law. The statute contemplates the relation of master and servant, or employer and employé, and no other class of persons. The officers and directors of a corporation are the controlling powers of the corporation, being the medium through which they act. Their acts, within the law, are the acts of the corporation. Through them the corporation is cited and brought into court, and their acts fix the responsibility of the corporation. They make the contracts with the employés of the corporation, and their negligence is the negligence of the corporation. It would seem that their relation to the corporation, as officers, would fix their status as other than that of the employés named in the statute, but the Legislature has deemed it appropriate, if not necessary, to provide that the officers of a subscribing corporation are not employés within the meaning of the statute. There can be no doubt that appellee at the time of his injury was not only an officer of the corporation, in several capacities, being general manager, director, secretary and treasurer, but also was the owner of one-third of the stock of the corporation. He had the absolute power to employ and discharge any employé of the corporation, and had the management of the entire business under his

control. It is true that occasional duties such as making repairs or temporarily assisting, under certain circumstances which might or might not arise, were devolved upon appellee, but these seemed merely matters incident to the employment as an officer, and it is stated in the agreed facts that he was to do the manual labor described "under his duties as such general manager." However, although managing, controlling and overlooking the work, hiring and discharging employés, it is stated that appellee was paid nothing for his constant and unceasing labor, but received $100 a month for occasional repairs and an occasional helping hand in the work when an employé was absent. The office of general manager is usually considered the most important connected with the operation of the corporation, weighted with the highest responsibilities, the discharge of which may make or mar the ends of corporate existence. Yet for these labors, requiring the exercise of wisdom, energy, and intelligence, nothing was paid, but a $1,200 salary was paid for an occasional helping hand about the plant, in the performance of labor that any common laborer might have done as well, if not better, than the director, secretary, treasurer, and general manager.

We feel confident that the lawmakers never conceived of the idea of conversion of an officer of a corporation into an employé to be protected by the Compensation Act, through the crude expedient of paying him for trivial and occasional manual labor. There must have been a reason for prohibiting the officers of the corporation from partaking of the benefits of insurance procured by themselves, or the law would not have made the exception. If there was a reason for the law, that reason was just as cogent and imperative as applied to an officer who occasionally drove a nail or pushed cotton into the rollers as to one who did nothing at all. If the performance of such menial services, occasionally rendered, can transform a director or general manager into an employé within the spirit of the law, the means of evading the provisions of the law are so simple and easily adopted that a virtual repeal of the law is secured. No such subterfuges or evasions should be recognized by the courts of the state, and it is deducible, from the conclusions of law of the trial judge, that he would not have entertained the proposition in this case had he not deemed that he was compelled to do so under the ruling of the Court of Civil Appeals of the Fifth Supreme Judicial District in the case of Millers' Mutual Casualty Co v. Hoover, 216 S. W. 475.

In the Hoover Case the injured party was the superintendent and head miller of the milling company, and his duties were to direct the machinery, the making of flour, and at times do the actual work in connection with such matters. He was without authority to employ and discharge servants. There was above him a general manager who had the authority to discharge Hoover if he saw fit. Hoover was also a director. The court held:

"The provisions of the quoted article, which exclude officials of the corporation from participating in the benefits of the act, we are convinced refer to them as such; that is to say, while they are engaged in the performance of the duties conferred on them by law, as, for example, as to directors, the general management and direction of the corporate affairs, and as to the officers, the exercise of those duties and powers conferred on them by the directors or the by-laws of the corporation. The article purports to deal with them in that respect only. It neither directly nor inferentially denies the right of such officials to have other and different relations with the corporation."

The facts of that case are quite different from the facts in this case. Hoover, although a so-called director, was possibly an employé of the corporation. He had no authority over any one. He merely superintended the machinery and repairs. He was a foreman, owning no interest in the corporation, and subject to being discharged by the president of the corporation, who hired him. While we doubt the soundness of the decision even under those facts, still, if it be correct, it would not be authority to rule that a man holding several offices and having supreme control of the affairs of a corporation of which he owned one-third could be classed with a man in Hoover's position. If the opinion in the Hoover Case makes an employé of Cook in this case, the law excepting the officers of a corporation from the benefits of insurance taken out by them is a dead letter. The directorate of any corporation can transform a director, president, or other officer into an employé by agreeing that he shall not be paid anything for his services as an officer, but, if he will occasionally drive a nail, look at the machinery, light the oil, or throw a shovel of coal into a furnace, he will be paid a salary. No qualifying language evincing such purpose is used in the statute, but it plainly and simply says:

"The president, vice president or vice presidents, secretary or other officers thereof provided in its charter or by-laws, and the directors of any corporation which is a subscriber to this act shall not be deemed or held to be an employé within the meaning of that term as defined in the preceding section hereof."

There is no sanction or license for reading into that law a provision that it shall not apply to one of the officers named if he performs duties not connected with his office and is paid therefor by the corporation.

The original law passed in 1913 had no provision excepting officers of the corporation, but in 1917 the exception was made a part of the law. An experience of four years with the law had convinced the legislative branch of the state government that officers of a corporation should not be included

among the beneficiaries of the law. The reason for the exception of officers could not have been, as suggested by appellees, that officers are in no danger of being hurt or killed, and no insurance was necessary. That would be a cogent reason for not mentioning them at all. The true reason is that the law was passed in the interest of the laborer, for the protection of the employé, not the employer, for the servant and not the master, for the servants of a corporation, and not the owners and directors of a corporation. The law may give incidental protection to the master through insurance, but the main object in view is to give the servant speedy and efficacious relief in case of injury. There is nothing in the law to indicate that it was anticipated or imagined that the agents of a corporation could act in the dual capacity of employer and employé, of master and servant. It would be a travesty on the law if a man in absolute control of the corporate business, so that he could, as the Roman centurion, "say to this man, Go, and he goeth; and to another, Come, and he cometh; and to [his] servant, Do this, and he doeth it"—yet in an instant could doff the robes of authority and become a hired servant, dressed in the humble habiliments of labor with the benefits and burdens attached thereto. It may be stated in connection with the Hoover Case that a writ of error was granted therein by the Supreme Court, with no notation, however, except, "We will hear this case, as the question is one of some difficulty."

In this case, as hereinbefore stated, appellee, H. W. Cook, was intrusted with the duty of keeping the books, writing the minutes, as well as with having charge, as treasurer, of the moneys of the corporation, as general manager hiring and discharging employés, and really being third in ownership and absolute in control of the corporation. As general manager, not as hired servant, he was "to see that the plant was kept in repair and running order"; as general manager, not as employé, he had authority "to purchase and pay for material and supplies"; as general manager, not as hired servant, he was to see "that customers were waited on, and, when occasion required it, he was to personally assist in any repairing or other work that required extra or temporary help in order to keep the gin going," and it was his duty, as general manager, not as hired servant, to take the place of an absent employé, and he was paid for these services as general manager, and not as an employé under a contract of hire.

Under the terms of the statute, an employer is "any person, firm, partnership, association of persons or corporations, or their legal representatives, that makes contracts of hire." Cook was undoubtedly an employer under that definition, and we are unable to understand how he can be an employer and employé at one and the same time. It is a marvelous combination of character and position. This sort of combination might occur in a comic opera, but not through the medium of a statute of the state. The statute should be construed as though article 5246—83 was appended to that part of article 5246—82 which defines an "employé" after the words, "except one whose employment is not in the usual course of trade, business, profession or occupation of his employer."

The position of this court in its construction of the Compensation Law is sustained by the authority of courts of last resort in other states. Matter of Stryker, 158 N. Y. 526, 53 N. E. 525, 70 Am. St. Rep. 489; In Matter of Petrie, 215 N. Y. 335, 109 N. E. 549; Post v. Burger, 216 N. Y. 544, 111 N. E. 351, Ann. Cas. 1916B, 158; Bowne v. Bowne Co., 221 N. Y. 28, 116 N. E. 364; Cooper v. Commission, 177 Cal. 685, 171 Pac. 684. In the last-cited case the Supreme Court of California, in a case where the widow of a partner in a concern sought to obtain the benefits of a Workmen's Compensation Law, on the ground that the deceased was employed and paid wages for certain labors at the time of his death, held:

"The Workmen's Compensation Act clearly does not contemplate such a mixed relation as that existing between partners, wherein each member of the partnership is at the same time principal and agent, master and servant, employer and employé; and wherein each, in any services he may render, whether under his general duty as a partner, or under a special agreement for some particular service, is working for himself as much as for his associates in carrying on the business of the firm. * * * Had the decedent survived to sue for his injury, he could not recover against his firm or his associates upon the plea that the appliance was defectively constructed, for the reason that as a member of the firm he was as fully responsible for such defects as were his fellow members thereof; nor could he recover for the negligent operation of the appliance by the employés in charge of it, for they were his own employés as much as they were the employés of his fellow partners; nor, as to such employés, could he be said to be a fellow employé, without involving the legal aspects of the case in hopeless contradictions. In a word, the law relative to compensation as between master and servant, or employer and employé, for injuries suffered by the latter, contemplates two persons standing in this opposed relation, and not the anomaly of one person occupying the dual relation of master and servant, employer and employé, plaintiff and defendant, or person entitled to a judgment or award in his favor and person bound to pay a part thereof out of his own proportionate share of the partnership property and the balance amounting possibly to the whole thereof, out of his own individual estate."

We conclude that the dual relation of employer and employé cannot be held by the same person, the two relations, diverse and antagonistic, cannot be retained in the same

person, as in the imaginary Dr. Jekyl and Mr. Hyde. Evidently the law intended to exclude the officers of a corporation from the benefits of the law, and it was not intended that the president, the secretary, the superintendent, the general manager or director of a corporation could lay aside his office and take it up again as he would a garment. Especially would this apply where the officer, in order to collect an employé's allowance from an insurance company, seeks to lay down the absolute direction of a corporation and assume the rôle of a common laborer. As said in the New York case of Bowne v. Bowne, herein cited:

"Theoretically he was subject to the orders of his corporation, and was liable to be discharged for disobedience. Practically, he was the corporation, and only by a legal fiction its servant in any sense."

Especially is this true when the transformations from employer to employé were constantly being made "in a moment, in the twinkling of an eye," like a "fade-away" in a moving picture, followed by a swift reincarnation.

The Workmen's Compensation Act, in fixing the compensation of employés in case of death or injury, never uses the word, "salary," but always the word, "wages." The latter word indicates what is paid to the servant by his master for his manual labor; the former indicates the stated compensation paid for the performance of official duties, or the rendering of services of a particular kind, and has reference to employment above the grade of mechanical or menial labor. The statute evidently intended that its benefits should be confined to real workmen or employés, and not extended to the officers of corporations, even before the amendment of 1917 (Laws 1917, c. 103) was passed. Weatherby v. Saxony Woolen Co. (N. J. Ch.) 29 Atl. 326.

The judgment of the lower court will be reversed, and it is the judgment of this court that the award of the board be set aside and held for naught, and that appellant recover all costs in this behalf expended.