## MILLERS' MUT. CASUALTY CO. v. HOOVER et al.  (No. 250—3453.)

(Commission of Appeals of Texas, Section B. Dec. 21, 1921.)

Master and servant ☞361—Corporate director superintending mill held "employé" protected by Compensation Act.

Under Workmen's Compensation Act, as amended by Laws 1917, c. 103, pt. 4, §§ 1, 1a (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—82, 5246—83), defining "employé" as one in the service of another under a contract of hire, and excluding corporate officers and directors, one injured in the performance of his duties as superintendent and head miller, who is subject to discharge, and receives a monthly salary, is not excluded from the benefits of the act, though he is also director of the corporation conducting the mill; the language of statute not being plain, but open to construction.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Employee.]

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Proceedings under the Workmen's Compensation Act by Mrs. Louise E. Hoover, opposed by the G. B. Smith Milling Company, employer, and the Millers' Mutual Casualty Company, insurer. An award of compensation was sustained by the Court of Civil Appeals (216 S. W. 475), and insurer brings error. Affirmed on the recommendation of the Commission of Appeals.

Hamp P. Abney, of Sherman, for plaintiff in error.

G. P. Webb, of Sherman, for defendants in error.

McCLENDON, P. J. The sole question presented in this case is whether an employé of a corporation is precluded from the benefits of the Workmen's Compensation Act as amended by the Act March 28, 1917 (Laws 1917, c. 103 [Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91]) by virtue of his also being a director of the employing corporation.

The facts of the case as found by the Court of Civil Appeals follow:

"The G. B. Smith Milling Company is a private domestic corporation, and conducts a flour mill at Sherman. It had a board of seven directors, consisting of G. B. Smith, Guy Frank Hoover, and five others. G. B. R. Smith was its president and general manager. Guy Frank Hoover was its superintendent and head miller. Generally his duties were to direct the operation of the plant machinery, the making of flour, overlook and direct repairs, and at times do the actual work in connection with such

matters. He was without authority to employ and discharge servants, though he did at times exercise that authority to a limited extent. The ultimate authority to direct the mill and its operation, to employ and discharge servants, was reposed in G. B. R. Smith, the president and general manager, who employed Hoover and had authority to discharge him. Hoover received a salary of $165 per month. Whether any part of said sum was paid him as a director of the corporation the evidence does not disclose. Hoover was accidentally killed at the mill while engaged in the performance of his duties as superintendent and head miller. Thereafter, within the time and manner directed by the act, his claim was presented to the Industrial Accident Board, and the award indicated was made."

The 1917 act defines an "employé" as follows:

"'Employé' shall mean every person in the service of another under any contract of hire, expressed or implied, oral or written, except masters of or seamen on vessels engaged in interstate or foreign commerce, and except one whose employment is not in the usual course of the trade, business, profession or occupation of his employer." Part 4, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—82).

Section 2 of part 1 (article 5246—2) exempts from the provisions of the act domestic servants, farm laborers, or the employés of a person, firm, or corporation employing less than three employés or engaged in operating any steam, electric, street, or interurban railway as a common carrier.

Section 1a of part 4 (article 5246—83), which is the section calling for construction, reads as follows:

"The president, vice president or vice presidents, secretary or other officers thereof provided in its charter or by-laws and the directors of any corporation which is a subscriber to this act shall not be deemed or held to be an employé within the meaning of that term as defined in the preceding section hereof."

Plaintiff in error contends that the proper construction of this section is that an officer or director of a corporation is precluded from the benefits of the act, regardless of whether, aside from his official duties, he be also a bona fide employé of the corporation within the meaning of the act; in other words, that the language employed in section 1a refers to the person, and not to the office. Defendants in error contend, on the other hand, that only the officers named as such are excluded from the benefits of the act; and, where they occupy the dual position of officers and employés within the meaning of the act, they are entitled to its benefits if injured while engaged in the performance of their duties as employés. This view was upheld by the trial court and Court of Civil Appeals. 216 S. W. 475.

We have reached the conclusion that the

case has been properly decided by those courts.

If the language employed in section 1a were so plain as not to admit of doubt or uncertainty as to its meaning, it would be the duty of the courts to give effect to that meaning regardless of whether such construction harmonize with the general purposes or policy of the act. But, where the language is of doubtful or uncertain meaning, resort may be had to canons of construction, and inquiry made into the purposes of the legislation. We are not prepared to say that the language of section 1a is so plain and free from doubt as not to call for construction and invite inquiry into the legislative intent. It has been held in a number of states that there is nothing in the relation of an executive officer or director of a corporation which is irreconcilably inconsistent with his being also an ordinary employé of the corporation within the provisions of Workmen's Compensation Acts. The cases upon this subject are collated in 1 Honnold on Workmen's Compensation, 173, and 28 R. C. L. 764, 765. Stockholders of a corporation are, in a sense, the owners of the corporation. Its directors have the sole management of its affairs, and their acts as such are its acts. The same may be said of its officers while acting within the powers delegated to them by the board of directors. But, as individuals, the stockholders, directors, and officers of a corporation are distinct legal entities, and are as entirely free to deal with the corporation by contract or otherwise, within certain well-defined limitations not essential to enumerate, as any other individual.

It is readily conceivable that one might occupy the dual relation of an ordinary employé coming within the benefits of the act, and of an employé coming within one of the excepted employments enumerated in the act. As, for example, a person operating a small manufacturing plant might have one in his employ in the plant who also performed services for him as a domestic servant. Under such circumstances, we think it would be held that the fact that he performed duties which were not within the protection of the act would not preclude him from receiving the benefits of the act if injured while performing the duties of an employé within the protection of the act. Why should not the same course of reasoning apply to one who is both officer and employé of a corporation? The only necessary construction to be placed upon section 1a is that officers and directors as such are precluded from the benefits of the act. Beyond that the express language is silent. To give it either of the constructions contended for would require supplementing the language used, if all uncertainty is to be removed. Plaintiff in error would supply after "directors of any corporation" the words "whether acting in their official capacity, or otherwise"; while defendants in error would supply at the same place the words "as such." It seems quite plain to us that in order to arrive at the legislative intent we must look beyond the mere language of section 1a.

In treating generally the subject of canons of construction applied to Workmen's Compensation Acts, 28 Ruling Case Law, p. 755, deduces the following from the authorities:

"In the construction of Workmen's Compensation Acts, the courts are, of course, guided by the general rules of statutory interpretation. It has been thought, inasmuch as the statute is in derogation of the common law, that it should be given a strict construction, but the courts have very generally held that a spirit of liberality should characterize its interpretations, for the reason that it is to be classed as remedial legislation. Indeed, some of the acts contain an express provision that the construction of the courts shall be liberal. There are, however, reasonable limitations upon the rule, and the operation of the law should not be stretched by any extravagant principle of inclusion. On the other hand the courts should be alert to check any reactionary tendencies, because a law, however much needed for the promotion of the public welfare, and however wisely framed, may be made so unsatisfactory by the spirit of it not sufficiently pervading its administration as to defeat its purpose and create danger of its abrogation, and a return to the conditions which gave rise to the effort for relief. Though a court may profess adherence to the rule of liberality, some doubt must rest in respect of its sincerity, where decisions are in the closer cases against the statute, and where support for such decisions is sought in definitions and references to lexicographers. To define is to limit; and a refinement of definition discloses opposition to the spirit of the act."

A succinct statement of the purposes of this character of legislation is given in an extended note in L. R. A. 1917D, page 82, as follows:

"The general theory of the acts is that the industries should bear the burden of injuries to employés as it does the breakage of machinery; and consequently the element of negligence on the part of either the employer or the employé, unless it is willful, does not enter into the case. In place of the lengthy, costly, and uncertain remedy which the employé had in cases in which he was injured by the negligence of the employer, he is given a remedy, inexpensive and immediate, in all cases in which he suffers injury. The procedure is summary and replaces the old system of action for negligence which was so often unjust to employer and employé alike."

It may not be amiss also to quote from same leading cases upon this subject:

"The common-law and liability statutes furnished an uncertain measure of relief to the limited number of workmen who could trace their injuries proximately to the master's negligence. Compensation laws proceed upon the

theory that the injured workingman is entitled to pecuniary relief from the distress caused by his injury, as a matter of right, unless his own willful act is the proximate cause, and that it is wholly immaterial whether the injury can be traced to the negligence of the master, the negligence of the injured employé or a fellow servant, or whether it results from an act of God, the public enemy, an unavoidable accident, or a mere hazard of the business which may or may not be subject to more exact classification; that his compensation shall be certain, limited by the impairment of his earning capacity, proportioned to his wages, and not dependent upon the skill or eloquence of counsel or the whim or caprice of a jury; that, as between workmen of the same class who suffer like injuries, each shall receive the same compensation, and that, too, without the economic waste incident to protracted litigation and without reference to the fact that the injury to the one may have been occasioned by the negligence of the master, and to the other by reason of his own fault." Lewis & Clark Co. v. Industrial Accident Board (1916) 52 Mont. 6, 155 Pac. 268. L. R. A. 1916D, 628.

"Our act came of a great compromise between employers and employed. Both had suffered under the old system; the employers by heavy judgments of which half was opposing lawyers' booty; the workman through the old defenses or exhaustion in wasteful litigation. Both wanted peace. The master in exchange for limited liability was willing to pay on some claims in future where in the past there had been no liability at all. The servant was willing, not only to give up trial by jury, but to accept far less than he had often won in court, provided he was sure to get the small sum without having to fight for it. All agreed that the blood of the workman was a cost of production, that the industry should bear the charge." Stertz v. Industrial Ins. Commission (1916) 91 Wash. 588, 158 Pac. 256, Ann. Cas. 1918B, 354.

"They [Compensation Statutes] have apparently been passed in response to a widespread public opinion that a common-law action to recover damages for injuries suffered by employés from accidents while in the performance of their work under present industrial conditions is, in most cases, an imperfect and inadequate remedial instrumentality." Sayles v. Foley, 38 R. I. 484, 96 Atl. 340.

The following is from an opinion of the Supreme Court of the United States, delivered by Mr. Justice Pitney:

"In support of the legislation, it is said that the whole common-law doctrine of employer's liability for negligence, with its defenses of contributory negligence, fellow servant's negligence, and assumption of risk, is based upon fictions, and is inapplicable to modern conditions of employment; that in the highly organized and hazardous industries of the present day the causes of accident are often so obscure and complex that in a material proportion of cases it is impossible by any method correctly to ascertain the facts necessary to form an accurate judgment, and in a still larger proportion the expense and delay required for such ascertainment amount in effect to a defeat

235 S.W.—55

of justice; that under the present system the injured workman is left to bear the greater part of industrial accident loss, which because of his limited income he is unable to sustain, so that he and those dependent on him are overcome by poverty and frequently become a burden upon public or private charity; and that litigation is unduly costly and tedious, encouraging corrupt practices and arousing antagonisms between employers and employés." Railway v. White, 243 U. S. 188, 37 Sup. Ct. 247, 61 L. Ed. 667, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629.

The underlying reason for excluding the officers and directors or a corporation as such from the provisions of the act is apparent The officers and directors of a corporation do not come within the ordinarily accepted meaning of the terms "workmen" and "employés," for whose benefit the legislation is primarily enacted. Their duties toward the corporation and its business are those of managing and directing heads, and they do not, as a rule, perform the ordinary tasks, nor are they subjected to the ordinary risks, of employés or workmen engaged in the service of the corporation. Nor, as a general rule, is their compensation affected by their temporary disability caused by injury while engaged in their employment. On the other hand, where, although occupying an official position with the corporation, they are employed as workmen or employés in the ordinary sense of those terms, and come clearly within the provisions of the act, there would appear to be no substantial reason for excluding them from those benefits merely because they also hold official positions with the corporation; and the Legislature should not be presumed to have intended so to exclude them unless the language employed be clearly not susceptible of any other construction.

As throwing some light upon the legislative intent, both sides have adverted to the fact that on February 3, 1916, the Attorney General's Department addressed a letter to the commissioner of insurance and banking, which reads as follows:

"You have presented to the Attorney General through your deputy insurance and banking commissioner, a request for an opinion as to whether or not the officers of a corporation engaged in operating its business are to be considered as employés of the corporation under the Texas Employers' Liability Act, passed by the Thirty-Third Legislature in 1913.

"We beg to advise you that, in the opinion of this Department, officers of the corporation are employés within the meaning of this act, and are entitled to the privileges thereof and subject to its disabilities.

"Section 1 of part 4 of this act, which is article 5246yyy of Vernon Sayles' Civil Statutes of this state, defines the word 'employé' as used throughout this act and declares that 'employé' shall include every person in the service of another under any contract of hire, expressed or implied, oral or written, except

one whose employment is but casual or is not in the usual course of the trade, business, profession or occupation of the employer. This definition is comprehensive enough and as a matter of fact does embrace every person whether a laborer or an officer 'in the service of another under any contract of hire.' This act of the Legislature not only applies to the servants of corporations but to the servants of partnerships and individuals as well. Partnerships and individuals, of course, have no corporate officers and nothing in the act lends color to the proposition that corporate officers are not to be considered as employés. It is true that the word "employé" in its general acceptation does not apply to officers of the government of a corporation. Palmer v. Van Santboard, 38 L. R. A. 402.

"At the same time the word 'employé' is comprehensive enough to embrace any one whether an officer or workman in the service of another. The authorities say 'an employé is one who works for and under the control of his employer.' Employers' Indemnity Co. v. Kelly Coal Co., 149 S. W. 992; Employers' Indemnity Co. v. Kelly Coal Co., 41 L. R. A. (N. S.) 963.

"The Century Dictionary defines 'employé' in part as follows: 'One who works for an employer; a person working for salary or wages.'

"It is true that this authority says that the term is usually applied only to clerks, working laborers, etc., and but rarely to the higher officers of a corporation or government or to domestic servants, but we are convinced that the use of the term 'employe' in the Texas statutes must be construed to apply to all persons in the service of another, because this application follows the plain and simple meaning of the definition given in the statute.

"It will be noted that in section 2, part 1, of the act, which is now article 5246hh of Vernon's Sayles' Civil Statutes, that certain classes of employés were excepted from the general terms of the act, and, among others, domestic servants and farm laborers. This exception is persuasive of the construction which we give the definition of employé as contained in article 5246yyy. Our definition of employé is a copy of the definition contained in a Massachusetts act, and Mr. Boyd in his work on Workmen's Compensation, section 406, declares that the Massachusetts act covers all employés engaged in employments affected by the law.

"You are therefore advised that 'every person in the service of another under any contract of hire,' in this state, unless within the specially excepted classes, as specified in section 2 of the act above referred to, are within the protective features of our employé's compensation act and are likewise subject to the liabilities of that act."

This opinion antedates the amendment of 1917 by a little over a year, and it is contended by both sides that the purpose of the amendment as contained in section 1a above quoted was to prevent the construction given by the Attorney General to the definition contained in the 1913 act, plaintiff in error contending that the purpose was to exclude officers and directors acting as such or in any other capacity, and defendants in error contending that the amendment was only intended to exclude officers and directors while acting as such.

We are inclined to think that this opinion, if it were the occasion for the amendment, leaves the matter as much in doubt as it was before. The particular question whether the act of 1913 embraces officers as such or officers while acting in any capacity is not referred to in the opinion and clearly we think that it was the intention of the Attorney General to hold that "the officers of a corporation engaged in operating its business are to be considered as employés of a corporation" while acting in their official capacity. It is quite clear that section 1a does exclude from the benefits of the act officers while acting in their official capacity. Whether the Legislature intended by the language used to exclude them under all circumstances is a question which we think the Attorney General's letter had no reference to. If, therefore, the only purpose of the Legislature in enacting section 1a was to prevent the class of persons named in the Attorney General's letter from participating in the benefits of the act, and no more, then it may be said, we think, that the letter gives some color to the interpretation contended for by defendants in error.

Aside from this however, we feel quite confident in the conclusion first expressed that, by the language employed, it was the intention of the Legislature to preclude only the class of persons enumerated in section 1a from the benefits of the act as a class, and not the individuals of that class who might fall under other relations they might sustain to the corporation, within the clear purview of the act. We are not called upon here to construe the meaning of the term "officers" as employed in section 1a, nor to consider the effect of a subterfuge resorted to for the purpose of bringing an officer or director within the provisions of the act. It is clear, and in fact conceded, that Hoover was head miller of the corporation; that his employment was bona fide; that he lost his life in the discharge of his duties as head miller; that in such employment he was not acting as officer or director of the corporation; and that he clearly came within the provisions of the act, unless precluded by section 1a.

We conclude that the judgments of the district court and Court of Civil Appeals should be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.