VISITING NURSE ASSOCIATION, Appellant, vs. INDUSTRIAL
COMMISSION OF WISCONSIN and others, Respondents.

*January 14—February 7, 1928.*

*Workmen's compensation: Who constitutes employer: Nurse fur-
nished by association to industrial concern.*

1. In an action to set aside an award of the industrial commission,
   evidence showing that a nurse was rendering services for a
   mutual benefit association of the defendant dairy company
   when injured and was receiving a pay check from the Visit-
   ing Nurse Association for a less amount than such association
   received from the dairy company, from which, however, the
   nurse received her daily instructions, is *held* to support a find-
   ing of the commission that the nurse was employed by the
   Visiting Nurse Association when injured. p. 164.
2. Where the Visiting Nurse Association agreed to furnish the
   dairy company with nursing service and the nurse rendering
   such service was injured while so employed, the fact that she
   occasionally did some first-aid work for the dairy company
   could not change the relation of the parties, even if such work
   was not contemplated as coming within her nursing duties.
   p. 165.

APPEAL from a judgment of the circuit court for Dane
county: AUGUST C. HOPPMANN, Circuit Judge. *Affirmed.*

Action to set aside an award of the *Industrial Commission.*
*Marguerite Herz* was originally employed by the *Visiting
Nurse Association,* later she rendered service for the defend-
ant the *Gridley Dairy Company,* and the question was:
Whose employee was she at the time she was injured? It
is claimed by the plaintiff that she was in the employ of the
*Gridley Company,* and it is claimed by it that she still was
the employee of the plaintiff. It is not essential to define
the relation between the *Gridley's Mutual Benefit Asso-
ciation* and the *Gridley Dairy Company,* because whether it
is a separate corporation or not the *Commission* found that
the *Gridley Dairy Company* is responsible. Its finding reads:

"It is clear to the *Commission* that the applicant was not
at the time of her accident an employee of the *Gridley Dairy*

*Company.* She was either an employee of *Gridley's Mutual Benefit Association* or of the *Visiting Nurse Association.* Because of the peculiar working arrangement, this is not easy of determination.  So far as the applicant is concerned, it is not especially material, because in either event she is still within the benefits of the compensation act.  *Gridley's Mutual Benefit Association* was so related to the *Gridley Dairy Company* that for the purposes of compensation it was a contractor under the *Gridley Dairy Company,* organized, brought into being, and controlled more largely than otherwise for the benefit of the *Gridley Dairy Company.*  Because of the fact that this association was not at the time subject to the compensation act, the *Gridley Dairy Company* as its principal was and is liable under compensation to any employee of the benefit association injured in the course of employment, as provided in sec. 102.06 of the Statutes.  If she was an employee of the *Visiting Nurse Association* she takes benefits because of the fact that this corporation was subject to the law.  The *Commission* has reached the conclusion that applicant was at the time of her accident an employee of the *Visiting Nurse Association* and that her injury came while she was performing service growing out of and incidental to her employment."

The evidence with reference to the employment of *Miss Herz* by the *Gridley Dairy Company* is not in dispute and can be summarized as follows: *Miss Herz* testified:

"I went to the *Gridley Dairy Company* through the *Visiting Nurse Association.* . . . The position was offered me by Miss Kowalke and I accepted it.  *Q.* What did she say to you at that time?  *A.* She informed me that the *Gridley Dairy Company* wanted a nurse and offered this position to me. . . . I don't remember whether anything was said about pay or anything of that sort at that time.  Before I went to the *Gridley Dairy Company* I had no conversation with anybody at that company.  Miss Kowalke sent me there.  My instructions were that the work was to be carried on as I had been doing in the district work.  The arrangement as to pay was not changed any after I went to the Gridley plant; I was paid by the *Visiting Nurse Association* by check, which I or my sister called for at the office of the

*Visiting Nurse Association.* . . . The salary I received while working at the *Gridley Dairy Company* plant was $130, the same amount I had been receiving just before I went into this work. In other words, there was no change in salary when I went to the *Gridley Dairy Company.* For a time, while I was doing the so-called visiting work, before going to work for the *Gridley Dairy Company,* I reported each day at the *Visiting Nurse Association* for instructions. . . . *Q.* Then when you went to work for the *Gridley Dairy Company* you didn't report at the *Visiting Nurse Association* each day after that? *A.* No, sir. . . . After I started work with the *Gridley Dairy Company* I went back to the *Visiting Nurse Association* about once a week to attend conferences there and, possibly, another time to call for my check. My check for $130 continued to be issued by the *Visiting Nurse Association.* It received more than that amount from the *Gridley Dairy Company.* I don't know how much and I don't know what became of the excess. The *Visiting Nurse Association* did not act as a nurses' directory or send out some of its nurses to do private work. I was sent out by the *Nurse Association* to the *Gridley Dairy Company* for this particular work and had no conversation with the company with respect to pay before I went out. . . . *Q.* You did no work for any one else from that time on, commencing August, 1923, up to the time of your injury? *A.* No, sir. . . . I remember that Miss Kowalke told me to go to work for the *Gridley Mutual Benefit Association.*"

Miss Kowalke testified:

"I am superintendent of nurses for the *Visiting Nurse Association.* I remember when three men of the *Gridley Mutual Benefit Association* came to the office of the *Visiting Nurse Association* to see me about a prospect of doing nursing service for members of the association. *Q.* What happened when we went there—what did you say? *A.* As I remember it, no definite arrangement was made. We discussed the possibility of the *Gridley Mutual Benefit Association* employing a nurse through the *Visiting Nurse Association.* We have various business arrangements with various industries in the city giving that service. I gave you an idea of what our service was and what you could expect

from the association. As I recall it, no definite arrangements were made on the first day of your visit. I came to your office and made definite arrangements later. The arrangement was, the *Visiting Nurse Association* gave you a nurse to carry on the nursing service with the *Gridley Dairy Company Mutual Benefit Association* in a similar way as in the association. That nurse would be sent to the *Gridley Dairy Company* and the *Visiting Nurse Association* would pay the visiting nurse a stipulated amount, and the *Visiting Nurse Association* in turn would supply the nurse to carry on that work as they saw need for the service; in case of illness or vacation time the *Visiting Nurse Association* would send in a substitute to relieve that nurse. *The choice of nurse was left entirely to the Visiting Nurse Association as to the permanent nurse and relief nurse.* . . . I don't know whether the *Visiting Nurse Association* received $140 or $145 a month in the employ by the *Gridley Mutual Benefit Association* of *Miss Herz*. Our association gave *Miss Herz* a check in turn for $130 each month. The excess of $10 or $15 per month was used to give the nurse a vacation, and in case of illness the nurses are allowed two weeks with pay throughout the year, and then we agree to send in a substitute to relieve these nurses."

*Miss Herz* recalled:

"*Q.* During this time did Miss Kowalke give you any instructions or directions as to the work you were doing commencing August 1, 1923? *A.* Not any further than that I was to carry on the visiting nurse service there as I had done before."

Mr. Frank W. Kelly, a manager of the country department of the *Gridley Dairy Company* and one of the men who went to see Miss Kowalke about a nurse, testified:

"*Q.* Did you mention to Miss Kowalke for whom these services of a nurse were to be engaged? *A.* Yes, for the *Gridley Mutual Benefit Association.* . . . We told her that this service was to be for the *Gridley Mutual Benefit Association.*"

*Miss Herz* testified repeatedly that she took her daily instructions from officers of the *Gridley Company* and that she did not report to the *Visiting Nurse Association* daily.

The circuit court entered a judgment affirming the award of the *Commission,* and the *Visiting Nurse Association* appealed.

For the appellant there was a brief by *McGovern, Lyons, Curtis, Devos & Reiss* of Milwaukee, and oral argument by *Wallace Reiss.*

For the respondents there was a brief by *Glicksman & Gold* of Milwaukee, attorneys for the *Gridley Dairy Company* and *Gridley's Mutual Benefit Association,* and by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and a supplemental brief by *Glicksman & Gold;* and the cause was argued orally by *Mr. Nathan Glicksman* and *Mr. Levitan.*

VINJE, C. J.    It seems so clear to us that the *Gridley Company* hired nursing service and not a nurse that there is no necessity for a detailed argument to sustain that view. Among some of the salient facts sustaining it are these: *Miss Herz* never talked with any member or officer of the *Gridley Company* before she went there to work; nothing was said between them as to hours of work or wages. She continued to be paid by the *Visiting Nurse Association.* It could discharge her. The *Gridley Company* could not. Miss Kowalke testified: "The choice of nurse was left entirely to the *Visiting Nurse Association* as to the permanent nurse and relief nurse." The *Visiting Nurse Association* was to furnish necessary nursing service for the *Gridley Company,* not asked to hire any particular nurse for it. The *Visiting Nurse Association* did not engage in the business of hiring nurses for private parties according to the testimony, but furnished nursing service to industrial plants.

The case of *Cayll v. Waukesha G. & E. Co.* 172 Wis. 554, 179 N. W. 771, is much relied upon by appellant as being identical with this case. There Massino, the employee of Cayll, voluntarily consented to transfer his employment from Cayll to the Waukesha Gas & Electric Company, which temporarily needed some extra men. While in the employ of

the company he was injured, and it was held the Waukesha Gas & Electric Company was liable for compensation. Here the *Visiting Nurse Association* sends *Miss Herz* to perform services which it has contracted to perform and for which it receives pay in excess of what it pays the employee sent to perform it. The *Visiting Nurse Association* was not an employment agency for nurses where private parties could go and hire them, but it was in the business of furnishing nursing service for a profit. The *Gridley Dairy Company* paid it $10 or $15 more per month than it paid *Miss Herz*. True, it says it spent this money for giving nurses a vacation or for sick leave. How it spent the extra money is quite immaterial. It could spend it any way it saw fit. We have here a case where a party furnished professional services for a profit—quite a different case from *Cayll v. Waukesha G. & E. Co.* 172 Wis. 554, 179 N. W. 771. In that case the original employer did not profit by the transaction at all. Just as an accommodation he let the gas company have one of his men, and he paid the man all he received from the gas company. Generally where a firm or corporation agrees to furnish professional services, the man or employee sent to perform them remains the employee of the firm or corporation that agrees to furnish the service—especially where he continues to receive the same pay as before and his employer profits by the transaction. Much stress is also laid upon the fact that after *Miss Herz* went to work for the *Gridley Company* she was daily instructed by it whom she should attend and what she should do, and therefore she or the *Visiting Nurse Association* was not an independent contractor, but an employee of the *Gridley Company,* citing *Madix v. Hochgreve B. Co.* 154 Wis. 448, 143 N. W. 189, and kindred cases. Here the primary question is not one of employee and independent contractor. The question is, In whose employ was *Miss Herz*—in that of the *Gridley Company* or the *Visiting Nurse Association?* There can be no claim that

she was an independent contractor. Whether the *Visiting Nurse Association* was one need not be decided. It is enough for the purposes of this case that it agreed to furnish nursing service for the *Gridley Company* at so much per month and agreed to send a nurse of its selection to perform that service. Such an arrangement necessarily required that she should receive from the *Gridley Company* directions as to whom her services should be rendered.

The fact that *Miss Herz* occasionally did some first-aid work cannot change the relation of the parties even if such work was not contemplated as coming within her nursing duties.

We are asked by the defendants to review the *Commission's* finding as to the relations of the *Gridley's Mutual Benefit Association* to the *Gridley Dairy Company* set out in the statement of facts. The result of the decision renders that unnecessary, and besides it may be questionable whether that can be reviewed short of an action brought by the parties. Here only the plaintiff has brought an action, and it is not interested in the question.

*By the Court.*—Judgment affirmed.