Wisconsin Holding Corporation, Appellant, vs. Industrial Commission and another, Respondents.

*March 8—April 3, 1934.*

For the appellant there was a brief by *Olin & Butler,* and oral argument by *Clifford G. Mathys,* all of Madison.

For the respondents there was a brief by the *Attorney General* and *Herbert H. Naujoks,* assistant attorney general, attorneys for the Industrial Commission, and by *Darrell MacIntyre* and *Lester C. Lee,* both of Madison, attorneys for Hurst, and oral argument by *Mr. Naujoks* and *Mr. MacIntyre.*

FAIRCHILD, J.   In answering the controlling question which arises from the controversy here submitted, it is necessary first to determine whether or not the appellant may, under any phase of the statutes, be said to be subject to the Workmen's Compensation Act.   The finding of the commission that appellant was subject to that act was evidently made without due consideration of the terms of the statute, and because of confusion with each other of the identity of separate and distinct corporations.   The appellant is a holding corporation domiciled in Madison, Wisconsin.   One of its subsidiaries is the Central Finance Company.   This is also a Wisconsin corporation, and appellant rents office space from the Central Finance Company.   The Central Finance Company was engaged in the business of liquidating the accounts of business men by loaning money enough to pay indebtedness, and permitted the repayment of the loans and advances in an orderly manner.   Its business was extensive, it kept a complete card index of accounts, made remittances, and, in order to carry on its work, it employed the necessary help.   A thorough study of the evidence, a brief review of which will be made, convinces one that the appellant did not do any of the things necessary to bring it under the act.   It did not file with the Industrial Commission a statement of its election to accept the provisions of ch.102, Stats., nor did it take out a policy of compensation insurance, nor did it have in its employ three or more persons in common employment at any given time.

The evidence upon which the commission attempts to base its finding that the appellant was the employer of three or more employees and, consequently, came under the act, is as follows: Respondent Hurst was in the employ of appellant during the period from February to the middle of June, 1932. There appears to have been no other employees during that time. One L. H. Mohr, the secretary and treasurer of appellant, had been employed up to the year 1932. Whether his position was taken over by Hurst or not does not appear, but it is stated without contradiction that Mohr received no salary from appellant in 1932.

The evidence with relation to Miss Locke, whom the commission treats as an employee, is that she was a stenographer employed by the Central Finance Company, and did at times write letters and perform tasks for the appellant, at the direction of Hurst or Mohr, who at this time was general manager of the Central Finance Company. She estimated that her time consumed by such work might be from one-eighth to one-fourth, and after making that statement she was asked, "Of your entire time or the time that you did the stenography?" To this question she replied, "I couldn't say that,—because there were some days I would not have anything at all. I might have two letters out of twenty or thirty that would be Wisconsin Holding Corporation." Respondents contend that this evidence shows that Miss Locke was an employee of the Wisconsin Holding Corporation within the purview of the Workmen's Compensation Act during the period that respondent Hurst was employed by the appellant.

The testimony with relation to Miss Heibel does not go, in its significance, beyond that which has been described as relating to Miss Locke's position. There is no evidence that at any time when Miss Locke, an employee of the Finance Company, wrote the letters, that Miss Heibel was also engaged in doing some things for the appellant. The statute, sec. 102.05 (2), provides that the employer, if he "at any

time have three or more employes he shall be deemed to have elected to accept the provisions of this chapter, unless . . ."

The evidence shows that Mohr was the secretary and treasurer of the appellant. This does not make him an employee. While an officer of a corporation may also be its employee, ordinarily the officers and directors do not come within the terms of the Workmen's Compensation Act. To effect liability of the employer or to create a right as an employee, he must be an employee rendering service for another under contract of hire. *Milwaukee Toy Co. v. Industrial Comm.* 203 Wis. 493, 234 N. W. 748; *Millers' Mut. Cas. Co. v. Hoover* (Tex. Comm. App.), 235 S. W. 863. With Mohr excluded from the claimed employees, it remains for us to decide whether or not Miss Locke and Miss Heibel were employees of appellant. The statute defining "employee" lays down in no uncertain terms the proposition that to create the status of employee the person must be in the service of another under some contract of hire, express or implied. It is very apparent that the appellant was unaware of its situation if, as a matter of fact and law, it did place itself under the compensation act. As said, appellant rented office space from the Central Finance Company, it was interested in the Central Finance Company. While of no particular moment, it is interesting to note that the Central Finance Company had workmen's compensation insurance and the appellant did not.

The finding of the commission that Miss Heibel and Miss Locke were employees of appellant ignores the fact that they were employees of the Finance Company, that anything they did which may have been a benefit to the appellant was not done with any consciousness on their part that they were working for any one other than the Finance Company. There certainly existed no express contract, and it is equally certain that the facts presented do not form

a basis for an implied contract, to create the relation of employer and employee between these young ladies and the appellant. They were not persons in the service of appellant under contract of hire, express or implied. The statute limits the meaning of the word "employee" to those who are under contract of hire, and may include helpers and assistants of employees if such helpers are employed with the knowledge, actual or constructive, of the employer. The idea of compensation is embodied in the entire legislative scheme of the act, the compensation itself is dependent upon the average weekly earnings and upon the wage loss, and, except for certain specifically designated injuries, there can be no compensation in the absence of a showing of a wage loss. Miss Locke testified that at all times she considered herself an employee of the Finance Company, that she never had any arrangement whereby she became an employee of appellant. Miss Heibel is in the same situation. Their spasmodic and intermittent performance of tasks beneficial to appellant was under the direction of their employer, the Finance Company. A diligent study of the facts presented does not disclose any evidence of any fact which can be the basis of a finding that either of these employees of the Finance Company ever became employees of appellant. *Visiting Nurse Asso. v. Industrial Comm.* 195 Wis. 159, 217 N. W. 646.

The case of *Rhinelander Paper Co. v. Industrial Comm.* 206 Wis. 215, 239 N. W. 412, states the doctrine controlling here:

"It is quite generally agreed that in order to transfer liability from the general employer to the one to whom the employee is loaned, there must be some consensual relationship between the loaned employee and the employer whose service he enters, sufficient to create a new employer-employee relationship. Where an employee enters the service of another at the command and pursuant to the direction of the master, no new relationship is created. While the em-

ployee may be subject to the direction of the temporary master, he is there in obedience to the command of his employer, and in doing what the new master directs him to do he is performing his duty to the employer who gave the order. . . . Consent cannot be inferred merely from the fact that the employee obeyed the commands of his master in entering the services of another."

When respondent Hurst left the employ of appellant on June 14th, he entered the employ of Crawford and was in his employ at the time of the injury. Because of the conclusion reached that the appellant was not an employer subject to the act, it is unnecessary to consider the other questions advanced in the briefs of the parties.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment vacating the award of the commission.