ROGERS, Appellant, vs. VALLEY OUTDOOR THEATER COMPANY and others, Respondents.

*December 2, 1952—January 6, 1953.*

For the appellant there were briefs by *Stafford & Stafford* of Chippewa Falls, and oral argument by *Harold E. Stafford*.

For the respondent S. M. Grengs there was a brief by *Bendinger, Hayes & Kluwin* of Milwaukee, attorneys, and *Darrell O. Hibbard* of Eau Claire of counsel, and oral argument by *Mr. John A. Kluwin* and *Mr. Hibbard*.

*Frank L. Morrow* of Eau Claire, for the respondents Theodore Karatz, Ted Balnyck, and Samuel P. Halpern.

FAIRCHILD, J. The doctrine of loaned employee recognized in this state, where the loaned employee works with the borrowing, or temporary, employer's men has been frequently pointed out. *Cayll v. Waukesha G. & E. Co.* (1920), 172 Wis. 554, 179 N. W. 771; *Visiting Nurse Asso. v. Industrial Comm.* (1928), 195 Wis. 159, 217 N. W. 646; *Spodick v. Nash Motors Co.* (1931), 203 Wis. 211, 232 N. W. 870. When the evidence shows who has the power of control and whose is the work, the relationship of master and servant is established. In the *Spodick Case, supra,* we followed the holding in *Standard Oil Co. v. Anderson* (1909), 212 U. S. 215, 29 Sup. Ct. 252, 53 L. Ed. 480, and held that (p. 214) :

"In many of the cases the power of substitution or discharge, the payment of wages, and other circumstances bearing upon the relation are dwelt upon. They, however, are

not the ultimate facts, but only those more or less useful in determining whose is the work and whose is the power of control."

A distinction of facts exists between those in the cases relied upon by appellant and those in the case at bar. We do not deem it necessary, in view of the authorities controlling cases of this character to review all of the citations of the appellant. However, in *Bertino v. Marion Steam Shovel Co.* (8th Cir. 1933), 64 Fed. (2d) 409, and cases cited there, on which reliance is placed by appellant, the principles of law set forth, so far as they may be applicable to the facts now before us, support the ruling made by the trial court in directing a dismissal of plaintiff's (appellant here) complaint in the case at bar. It is stated in the *Bertino Case* (p. 412), quoting from *Yelloway v. Hawkins* (8th Cir. 1930), 38 Fed. (2d) 731, that "The test is whether the servant is engaged in the work of the new master, who has particular 'power to direct and control the manner of performing the very work in which the carelessness occurred.' "

Hipp's relation to the appellant must be determined by the facts disclosed in this record. The occasion for Hipp's becoming a helper and agent for Service Decorators arose from the following circumstances:

The Service Decorators, carrying on a general decorating and painting business, entered into the following contract with Valley Outdoor Theater Company:

"Service Decorators agree to paint the tower two coats of white and one coat of black and to furnish all necessary equipment and labor. Valley Outdoor Theater owners of tower located on Highway 53 between Eau Claire and Chippewa Falls, agree to furnish all paint and thinners only.

"The area to be painted consists of white 36′ x 48′ starting one foot from top, plus a top border of black 1 foot in depth and width of tower and a two-foot border across bottom as well as a four-foot border of black on each side of white panel.

"All of the above for and in consideration of $197 to be paid upon completion of job."

Service Decorators moved their equipment to the premises of the Outdoor Theater Company on April 9th. The next day when they began to organize for the operation, certain difficulties were encountered in the way of reaching the surface of the screen to be painted. In order to overcome the difficulties, they provided certain equipment including a scaffold, pulleys, and ropes. Finally, on April 13th, an effective method was put into operation for reaching the screen to be painted. A rope attached to a truck owned and operated by a partner of appellant raised and lowered the scaffold, but in order to hold the floor of the scaffold level another rope was attached to an outrigger, extended over the top of the screen, and operated from behind the screen. It was in order to operate the rope that balanced the floor of the scaffold that Service Decorators sought outside help, and it was in this operation that during the early part of the day a jeep was used and operated by one Foley. At 4:30, the usual quitting time, Foley prepared to leave and take the jeep with him, thus making it necessary for Service Decorators to substitute a car in place of the jeep and another individual in the place of Foley. It was under these circumstances that Hipp, generally employed by Valley Outdoor Theater Company, was induced to remain on the premises after the other employees of the Theater Company had left and to use his car in carrying out the work of Service Decorators.

That the work was the work of Service Decorators and done for their benefit is clear from all of the facts of the case. It was because of the need on the part of Service Decorators for additional assistance that Hipp consented to act and use his car under their supervision. When Foley left at 4:30 Service Decorators needed only a few hours in which to complete their contract with Valley Outdoor Theater Com-

pany. They had their equipment set up, and Phend, one of the members of Service Decorators admitted on cross-examination that he was anxious to get through with the job that night so that they would not have to come back. Roger, the appellant, and a member of Service Decorators, testified that he was "the one suggesting that we finish the screen and put in the overtime."

In accord with the rule existing in our Wisconsin cases, we hold that the doctrine of *Standard Oil Co. v. Anderson, supra,* also controls this case and upon the facts of the case determines whose work was being performed, for that question "is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work." At the close of the trial all of the evidence was to the effect that Service Decorators had complete control of the operation in which Hipp consented to use his car and operate it in response to orders to be received from Service Decorators. Phend testified:

"*Q*. You controlled the movement then as to when it [the scaffold] would be raised and lowered . . . ? *A*. Yes, sir. . . .

"*Q*. . . . Red [Hipp] had to operate the vehicle to do that? *A*. He was told not to operate that vehicle, only to do so when told by one of us. . . .

"*Q*. So that all the time that Hipp was making these various movements prior to the accident . . . his acts were under your direction and control? *A*. Yes, sir.

"*Q*. Now, who gave the instructions or who told him to get into the jeep or to get into his car and move it in accordance with the directions . . . ? *A*. Those orders all came from me."

The learned trial judge, applying the principles governing the relationship of master and servant to the testimony given on the trial, portions of which are quoted above, ruled that the respondents were not liable for any damages resulting to the appellant by reason of any act on the part of Hipp; and that the relation between Hipp and Service Decorators, in

which partnership plaintiff and appellant was a member, was that of employee and employer, or, as usually termed in legal parlance, the relation was that of master and servant. The ruling below must be affirmed.

*By the Court.*—Judgment affirmed.