COOK v. MILLERS' INDEMNITY UNDERWRITERS. (No. 315-3647.) *

(Commission of Appeals of Texas, Section A. May 10, 1922.)

1. **Master and servant ⟨≡⟩361—Corporate director and general manager in charge of gin held an "employé" protected by Compensation Act.**

A stockholder designated as "general manager" of a gin company, a salaried position not provided for in its charter and by-laws, who was injured in the discharge of his duties under his contract of hire with the company, *held* entitled to compensation as an "employé" within Workmen's Compensation Act, pt. 4, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—82), though such duties were imposed on him as general manager, with authority to hire and discharge other workmen, and he was also a director, secretary, and treasurer of the corporation, officers of which, under section 1a (article 5246—83), are not employés.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Employé.]

2. **Master and servant ⟨≡⟩367—Corporate manager held not an independent contractor.**

A gin company's salaried general manager, to whom was delegated the power to employ and discharge other employés, was not an independent contractor, so as to be barred from recovery under Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.)

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by the Millers' Indemnity Underwriters to set aside an award of the Industrial Accident Board in favor of H. W. Cook. From a judgment of the Court of Civil Appeals (229 S. W. 598), reversing a judgment for claimant and setting aside the award, claimant brings error. Reversed, and judgment of trial court affirmed.

Page & Jones, of Bastrop, for plaintiff in error.

E. C. Gaines, of Austin, for defendant in error.

SPENCER, P. J. This was a suit by defendant in error, Millers' Indemnity Company, to set aside an award of the Industrial Accident Board in favor of plaintiff in error, H. W. Cook, for injuries received by him in the ginning plant of the Smithville Gin Company. The trial in the district court resulted in a judgment in favor of plaintiff in error, and an appeal was taken from this judgment to the Court of Civil Appeals. The latter court reversed the district court's judgment, and set aside the award. 229 S. W. 598.

The cause was tried, and is before us, upon the following agreed statement of facts:

"On the 3rd day of October, 1919, the Smithville Gin Company had paid the premium and held a policy of insurance duly issued by plaintiff, Millers' Indemnity Underwriters, and said gin company had complied with all the provisions of the Workmen's Compensation Law of the state of Texas, necessary to constitute it a subscriber within the meaning of said law, and by the terms of said policy of insurance, the plaintiff became bound to pay to any employé of said gin company injured by accident, in the course of the employment, the compensation provided in said law.

"On the 3d day of October, 1919, defendant, H. W. Cook, suffered an injury by accident at said gin, in the following manner: He was attempting to start the cotton into the round bale press, when his left hand got caught between the two rolls, and they pulled his arm into the press before the press could be stopped, and the injuries thus received resulted in the loss by amputation of his left arm.

"From 1903 to 1917 said Smithville Gin Company was a partnership, but the same was incorporated for $20,000 in 1917, and was such corporation at the time of said accident. During the time said gin was a partnership and since it has been a corporation, a one-third interest therein was and is owned by Dr. J. H. E. Powell, one-third by Emil Buescher and E. H. Eagleston, and one-third by defendant. H. W. Cook owned, at the time of said accident, one-third of the stock, or $6,666.66.

"At the time of the accident and during all of the time since 1903, both while said gin was a partnership and after it was incorporated, the defendant, H. W. Cook, owned a one-third interest therein, was a director continuously after the same was incorporated, held the office of secretary and treasurer, and, during the entire time and at the time of the accident, was general manager or superintendent, and had full charge of everything pertaining to the management of said gin, and took the place and did the work of any absent employé, and had authority to and did employ, pay off, and discharge labor. The other part owners of said gin took no part in the active management of same, were seldom about the gin, and were only familiar with the business or financial affairs.

"The compensation or salary of defendant, H. W. Cook, for the 12 months prior to said accident was $62.50 per month, from October 3, 1918, to March 1, 1919, and $100 per month from March 1, 1919, to October 3, 1919, when the accident occurred. The duties of the said H. W. Cook were those of director, secretary, treasurer, and general manager, and, under his duties as such general manager, he was to see that the plant was kept in repair and running order, to purchase and pay for material and supplies, see that customers were properly waited on, and, when occasion required it, he was to personally assist in any repairing or other work that required extra or temporary help, in order to keep the gin going, and it was his duty and he did perform the duty of taking the place of any absent employé and doing his work, making of himself a hand wherever the occasion required. Said H. W. Cook received no salary by virtue of his being a director, and secretary and treasurer of said gin company, but the salary received by said H. W. Cook was for labor performed in and about said gin, under circumstances as above herein set forth. Said H. W. Cook had authority to and had in fact always employed, contracted for, paid, and discharged labor in and about the gin. The salary drawn by H. W. Cook was by virtue of a contract of hire with said Smithville Gin Company.

"If the plaintiff is liable for compensation under the terms of the Workmen's Compensation Act, it would also be liable for the drug bill of Faulkenburg-Czichos Drug Company, in the sum of $4.85 and for the amount properly due Dr. W. R. Curham in the sum of $65, and for the reasonable hospital and medical bills incurred in the Temple Sanitarium for the first two weeks after the injury, in the sum of $372.-16, as provided by the Compensation Law, but if the plaintiff is not liable for compensation under said act, it would not be liable for any of said bills.

"In this case, claim for compensation was made before the Industrial Accident Board of the state of Texas, and the case was duly and regularly submitted to said board, and an award was made by said board, as described in the pleadings, and notice was given by plaintiff to all interested parties that it would not abide by said award, and suit was filed herein to set aside said award, all within the time prescribed by said Compensation Act."

The important and only question for decision is: Was Cook an employé within the meaning of the Workmen's Compensation Act and in the discharge of his duties as such at the time of the injury?

The Workmen's Compensation Act thus defines an employé:

" 'Employé' shall mean every person in the service of another under any contract of hire, expressed or implied, oral or written, except masters of or seamen on vessels engaged in interstate or foreign commerce, and except one whose employment is not in the usual course of trade, business, profession or occupation of his employer." Part 4, par. 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—82).

" 'Employer' shall mean any person, firm, partnership, association of persons or corporations or their legal representatives that makes contracts of hire." Part 4, par. 1, Vernon, supra.

Defendant in error contends that there is no liability because of the provisions of section 1a of part 4 (article 5246—83) which reads:

"The president, vice president or vice presidents, secretary or other officers thereof provided in its charter or by-laws and the directors of any corporation which is a subscriber to this act shall not be deemed or held to be an employé within the meaning of that term as defined in the preceding section hereof."

[1] The injuries to plaintiff in error were not received in connection with the discharge of his duties as either director, secretary or treasurer, but were received during the course of his employment, while in the discharge of his duties under his contract of hire. He is not therefore excluded from the benefits of the act, merely because he was director, secretary, and treasurer of the company. This precise question was determined by section B of the Commission of Appeals, in the recent case of Millers' Mutual Casualty Co. v. Hoover, 235 S. W. 863.

In that case the injured party was superintendent and head miller of the G. B. Smith Milling Company, a corporation. He was al-

so a director of the company. His general duties were to direct the operation of the plant machinery, direct repairs, and at times to do actual work in connection with these matters. He was without authority to employ and discharge servants, though he did at times exercise that authority to a limited extent. It was there held, under the given state of facts, that, as the injured party was not acting as officer or director of the corporation at the time of the injury, that he was not precluded from a recovery as an employé under the act, merely because he was a director. It seems to have been conceded that his employment as superintendent did not constitute him an officer within the meaning of the statute.

It is indirectly contended in this case, however, that Cook was injured while engaged in the discharge of the duties imposed upon him as general manager, and that the position of general manager made him an officer within the meaning of the act. In our opinion he was not an officer merely because he was designated as general manager. He was an employé under a contract of hire. The agreed statement of facts does not show that the office of general manager was provided for by the company's charter, nor called for by its by-laws. Merely designating a person as general manager would not convert an ordinary employé under a contract of hire into an officer. To be an officer, there must exist an office. There can be a de facto officer if there is a de jure office; but there can be no de facto officer if there is no de jure office. The duties required of plaintiff in error under the contract of hire were in part such as are performed by an ordinary employé and in part such as are usually delegated to agents.

In defining the powers of a general manager, Mr. Thompson in his work on corporations (2d Ed.) vol. 2, par. 1576, says:

"It has been said that such agent (general manager) must have the same general supervision of the corporation as is associated with the office of cashier or secretary. By whatever name he may be called, such managing agent is a mere employé of the board of directors and holds his position subject to the particular contract of employment; and unless the contract of employment fixes his term of office, it may be terminated at the pleasure of the board."

It is to be borne in mind that there is a marked distinction between officers and agents. This distinction is clearly pointed out by the Supreme Court of Georgia in Vardeman v. Penn. Mut. Life Ins. Co., 125 Ga. 117, 54 S. E. 66, 5 Ann. Cas. 221. It is there said:

"One distinction between officers and agents of a corporation lies in the manner of their creation. An officer is created by the charter of the corporation, and the officer is elected by the directors or the stockholders. An agency is usually created by the officers, or one or more of them, and the agent is appointed by the same authority. It is clear that the two terms officers and agents are by no means interchangeable. One, deriving its existence from the other, and being dependent upon that other for its continuation, is necessarily restricted in its powers and duties, and such powers and duties are not necessarily the same as those pertaining to the authority creating it. The officers, as such, are the corporation. An agent is an employé. 'A mere employment, however liberally compensated, does not rise to the dignity of an office.'"

The contract of hire lends no force to the contention that he held the office of general manager. The salary received by him under the contract was for labor performed in and about the gin. It is a contract for his personal services, and he is a mere employé under it, not an officer. If in fact there was such an office as that of general manager, he held it independent of the contract. If independent of the contract, he is nevertheless entitled to recover, because the injuries were received by him while in the discharge of the duties under the contract, which duties were in no wise connected with the office of general manager.

A case somewhat similar to this one was before the Court of Appeals of New York. In that case the plaintiff was a stockholder in a corporation. He was president and treasurer of the company and employed as general manager. The services required of him, under the contract of employment, were such as were required of an ordinary employé. While performing these duties, he was injured and was awarded compensation by the Industrial Commission. In reviewing the finding of the Industrial Commission, that court said:

"A corporation is a complete entity, separate and distinguishable from its stockholders and officers, and, if it sees fit to have one of the latter serve it in the capacity of an ordinary employé, we see nothing to prevent it from so doing. That seems to us to be the present case. The claimant was 'employed' as general manager. The term 'general manager' is somewhat ambiguous and of itself might indicate either an executive and important officer, or a person performing ordinary duties of an employé. The evidence and findings in the case show that the position was of the latter class, and that the claimant performed ordinary detailed and manual work such as would be required of a typical employé. Under these circumstances we think that he was entitled to secure compensation as such for injuries under the general provisions of the Compensation Law, and that his case was not governed by or dependent upon the amendment of 1916." Skouitchi v. Chic Cloak & Suit Co. et al., 230 N. Y. 296, 130 N. E. 299, 15 A. L. R. 1285.

See, also, In re Paynes, 66 Ind. App. 321, 118 N. E. 387; Berman v. Reliance Metal Spinning & Stamping Co. et. al., 187 App. Div. 816, 175 N. Y. Supp. 838.

It is urged, however, that Cook was an "employer" within the meaning of the statute, and that he could not occupy the antagonistic dual relation of employer and employé at the same time. As to what the relation between Cook and the other workmen was, is not, in fact, involved in this suit. We are only concerned with ascertaining the relation existing between Cook and the corporation. Undoubtedly the relation was that of employer and employé, as has already been pointed out. Lest we be misunderstood, we will, however, notice the contention.

In employing the workmen, Cook was acting not for himself but for the corporation, whose representative he was. Whose employés were these workmen? Were they Cook's simply because he employed them to work for the corporation? Could they, at the same time, under a single contract of hire to do certain work in which the corporation only was interested, be servants of the corporation and its legal representatives? Certainly not. It is not thought that the Legislature intended by the language used to class as employers, the legal representatives of persons, firms, partnerships, corporations, and associations of persons who incidentally contract for the employment of workmen for the benefit of the latter. In the event of an injury to a workman so employed, for whose injury the legal representative would otherwise not be liable, the latter could justly rebel against the attempted imposition of any such liability upon him. No such penalty was intended to be imposed upon him. It was only intended by the language used, to include within the term employer, the legal representative's principal in those cases in which the representative had contracted for him.

[2] Nor do we think that Cook was an independent contractor, as is so strenuously insisted by defendant in error. The contract of hire has none of the elements that would make him such. He received a salary for the services performed. This is characteristic of the relation of employé and employer and not of an independent contractor with his contractee. The workmen were employed and paid by the corporation. To him was delegated the power to employ and discharge them. In so doing he was acting, not for himself, but for the corporation. He was, in exercising the broad powers delegated to him, at all times, acting subject to the control of the corporation which employed him. The contract was, we think, purely one of employment, in which the relation of employer and employé existed.

In view of the conclusions reached, we recommend that the judgment of the Court of Civil Appeals be reversed, and that of the trial court affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.