(No. 52382.—

LEONARD BOLNICK, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Shirt Tales, Ltd., Appellee).

*Opinion filed May 22, 1980.*

Gordon, Schaeffer & Gordon, Ltd., of Chicago (Gilbert W. Gordon, of counsel), for appellant.

Gifford, Detuno & Gifford, Ltd., of Chicago (Thomas W. Gifford, of counsel), for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

On August 16, 1976, claimant, Leonard Bolnick, fell in his company warehouse injuring his wrist. An Industrial Commission arbitrator awarded compensation, computing it on the basis of annual earnings of $51,620.92 and an average weekly wage of $997.71. On review the Industrial Commission found the yearly earnings to be $16,800 and the average weekly wage to be $323. *Certiorari* to the circuit court of Cook County resulted in confirmation of the Commission award. The case is before us pursuant to claimant's appeal under our Rule 302(a). 73 Ill. 2d R. 302(a).

The sole issue presented here is the nature of a yearly lump sum payment by respondent corporation to claimant. If that payment is properly regarded as a part of a

salary agreed upon by claimant and respondent, it is includable as "earnings" in computing the compensation due claimant for his injury. If, however, as respondent argues, such payments represented a return of claimant's capital, or a dividend, they are not "earnings" within the statutory definition of that term.

Claimant was the only witness. He testified that he had been employed by Woodfield Shirt Tales, Ltd., for three years; that he was its sole stockholder, served as its president, and that he and his wife comprised the company's board of directors. He also stated that the company operated on an August 1 to July 31 fiscal-year basis. His testimony regarding his salary arrangements is much less clear. He stated on direct examination that he was paid an annual salary of "Approximately forty-five to fifty thousand dollars, which is paid out to me on the basis of a check per month as a draw and settlement at the end of the fiscal year." This procedure, he added, had been used during his three years' employment with the company. When asked his wages "for the last fiscal year [8/1/75 to 7/31/76]," he replied, "Approximately forty-five to fifty thousand dollars, I am not sure." He believed his wages the year before that had been "about forty thousand." After claimant stated the circumstances surrounding the accident and injury, claimant's counsel again inquired as to how he was paid. In response to those questions claimant testified that during the last fiscal year he was paid $2,500 per month plus a $25,000 "makeup" on July 31, at the end of the fiscal year. On cross-examination, however, claimant was apparently shown exhibits not in the record before us, which indicated payment to him in August 1975 of $1,866.66, a like amount in September, $25,000 in October, nothing in November or December, and $2,500 during the balance of the fiscal year except in February when $3,000 was paid. Claimant denied the lump-sum-payment checks

represented profits from the business, stating their amounts represented the difference between his salary and the total of the monthly checks. The record does contain respondent company's exhibit No. 1, a letter from St. Paul Insurance Company, which apparently wrote respondent's workmen's compensation insurance, seeking information regarding the 1975 and 1976 wages of respondent. Apparently James Steidl, identified in respondent's brief as the company comptroller, responded showing the 1975 "actual salary was $16,799.94" and the 1976 "actual salary was $28,000" with a $25,000 "bonus" each year. This information from the company comptroller appears to have been the source of the Commission's $16,800 earnings figures. No copies of corporate meeting minutes or records concerning employment contracts or compensation were introduced or referred to.

Claimant testified as follows regarding the circumstances of the injury:

> "Well, I left my office, walked into the company store, in the warehouse store and they were quite busy and as my usual habit I began to wait on customers to help them out and one of the customers requested a particular shirt, which we do not have in the store itself, I had to go into the warehouse to get it. I went in the warehouse and got the shirt and as I was returning I slipped on a piece of paper on the floor, went up in the air. I came down on my arm."

Under our Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.1 *et seq.*) compensation for temporary total incapacity and the permanent partial loss of the use of a hand is computed on the basis of a percentage of the injured worker's average weekly wage (Ill. Rev. Stat. 1975, ch. 48, par. 138.8(b)) determined pursuant to the provisions of section 10 (Ill. Rev. Stat. 1975, ch. 48, par. 138.10). Section 10 provides:

> "(a) The compensation shall be computed on the basis of the annual earnings which the injured person

received as salary, wages or earnings if in the employment of the same employer continuously during the year next preceding the injury.

* * *

(g) Earnings, for the purpose of this section, shall be based on the earnings for the number of hours commonly regarded as a day's work for that employment, and shall exclude overtime earnings. The earnings shall not include any sum which the employer has been accustomed to pay the employee to cover any special expense entailed on him by the nature of his employment."

None of our earlier decisions has considered whether "earnings" as used in subparagraph (g) includes a large year-end bonus paid to one who is the president, director and sole stockholder of a close corporation. While the claimant in *B. W. Sales Co. v. Industrial Com.* (1966), 35 Ill. 2d 418, was in a similar position, there is no indication that the amount of his bonus was included in computing his compensation, or that any question was raised regarding it. Prior decisions of this court have, however, adopted the "dual capacity" doctrine as to corporate executives and clearly establish that one who is sole stockholder, president and director of a corporation may still be considered in an employer-employee relationship with the corporation if at the time of injury he is performing the work of an ordinary employee as distinguished from discharging his executive responsibilities. (*Master Leakfinding Co. v. Industrial Com.* (1977), 67 Ill. 2d 517, 528; *B. W. Sales Co. v. Industrial Com.* (1966), 35 Ill. 2d 418; *Stevens v. Industrial Com.* (1931), 346 Ill. 495.) It is clear that at the time he fell claimant was acting in the capacity of an ordinary salesperson. As such he was properly held to be an employee.

The more difficult question is whether the $25,000 claimant testified he received as a part of his salary must be included in computing his annual earnings. There seems little doubt that the usual type of annual bonus representing a modest fraction of the ordinary employee's

yearly salary should be included in computing annual earnings. 2 A. Larson, Workmen's Compensation sec. 60.12 (1976) and cases there cited; but see *Orlando v. Schiavo Bros.* (1973), 10 Pa. Commw. 86, 309 A.2d 84.

There is much greater doubt, however, as to the result in a situation such as the one before us, where the "bonus" may exceed the total of the monthly paychecks, and the recipient is the sole stockholder, president and director of the corporation. As Professor Larson points out, "when preponderant stock ownership is so used that the stock-holder is for practical purposes the alter ego of the corporation, the compensation acts, which are inclined to be realistic rather than technical, will often disregard the corporate entity and treat the stockholder as an employer." (1C A. Larson, Workmen's Compensation sec. 54.22 (1980); see, *e.g., Ben-Jay Food Distributors v. Warshaw* (Fla. 1954), 70 So. 2d 564.) Were we to abandon, as Larson urges, the "dual capacity" rule (1C A. Larson, Workmen's Compensation sec. 54.21 (1980)), claimant here might well be considered an employer. Since, at least for now, we adhere to our dual-capacity doctrine, we consider the question of inclusion of claimant's $25,000 bonus in that context. We are immediately confronted with the incongruity inherent in categorizing claimant as an employee only because he was engaged in nonexecutive duties when injured, and then computing his compensation for that injury on the basis of his salary as president. It is far more logical and consistent with the purpose of the Workmen's Compensation Act to compute his compensation for the injury on the basis of the employment which qualified him for coverage under the Act, without which he would receive no compensation at all. Information supplied by the company comptroller indicated claimant's "salary" to have been $16,800, and the Commission computed compensation on that

basis. There is no evidence as to the salaries of other sales clerks, and respondent has not questioned the Commission's action. If sales persons were paid at higher rates, which seems quite unlikely, the burden was upon claimant to establish that fact. *Keystone Steel & Wire Co. v. Industrial Com.* (1978), 73 Ill. 2d 269, 272.

We accordingly hold that the Commission's findings were not contrary to the manifest weight of the evidence and affirm the judgment of the circuit court of Cook County.

*Judgment affirmed.*