**154**

CASUALTY RECIPROCAL
EXCHANGE, Appellant,

v.

John R. HARRIS, et al., Appellees.

No. 6295.

Court of Appeals of Texas,
at Waco.

Oct. 15, 1981.

Rehearing Denied Nov. 12, 1981.

Michael A. Wash, Gibbins, Wash & Bratton, Austin, for appellant.

John F. Morehead, Daugherty, Kuperman, Golden, Carlisle & Morehead, Joel B. Mitchell, Austin, for appellees.

OPINION

JAMES, Justice.

This is a worker's compensation case. Paul C. Stone Jr., deceased, sustained a fatal gunshot wound on December 26, 1978, while working at a discotheque called "The Greenhouse" located in Austin, Texas. He died as a result of such injury on January 11, 1979. Plaintiff-Appellees are John R. Harris and Paul C. Stone Sr., executors of the deceased's estate, together with the deceased's father (individually), his ex-wife, and two minor children. Plaintiff-Appellees brought this suit against Defendant-Appellant Casualty Reciprocal Exchange, the insurance carrier for The Greenhouse, for various worker's compensation benefits. Trial was had to a jury after which the trial court rendered judgment awarding Plaintiff-Appellees compensation benefits in accordance with said jury verdict, from which judgment Casualty Reciprocal exchange appeals.

Paul C. Stone Jr., the deceased, was a vice president and director of Marju Enterprises, Inc., doing business as "The Greenhouse." The Defendant-Appellant carrier issued a policy of worker's compensation insurance to Marju Enterprises, Inc., which policy was in effect at all relevant times to this suit.

On the night of December 26, 1978, the deceased was working at The Greenhouse as a substitute manager. The previous night manager's employment had terminat-

ed in October 1978, and the deceased Stone was acting as manager until a suitable replacement could be hired. A dispute arose when two customers refused to finish their drinks and leave at closing time. The deceased was cleaning up and carrying some glasses to the bar. He proceeded to attempt to take the glasses from the two customers. One of the customers "jumped" the deceased while the other customer left the premises. A struggle ensued involving Stone, the customer, and the doorman, Charles Glendening. Stone and Glendening managed to take the unruly customer out on the front porch, where they told him that he was either going home or to jail. The customer said he would go home, but at that moment a gun fell out of his pants leg. Another struggle was made for the gun. When attained, it was given to Stone. At that time a man in the parking lot appeared with a gun, and shot the doorman twice and in a few moments shot Stone also. Stone died as a result of the gunshot wound on January 11, 1979.

Pertinent parts of the jury verdict are as follows:

(1) Paul C. Stone Jr., was acting in the course of his employment by Marju Enterprises, Inc., at the time the events occurred which resulted in the gunshot wound.

(2) Stone was employed by Marju Enterprises, Inc., in two capacities, that of a vice president and also as a substitute manager.

(3) Stone was performing the duties of a substitute manager at the time the events occurred which resulted in the gunshot wound.

(4) Stone was not performing the duties of a vice president at the time the events in question occurred.

The rest of the special issues dealt with the amount of his wages, not necessary to be itemized here.

The trial court rendered judgment in favor of Plaintiff-Appellees, awarding them compensation benefits in accordance with the jury verdict.

Appellant Casualty Reciprocal Exchange asserts in its first two points of error that the trial court erred in overruling Appellant's motion for judgment non obstante veredicto and in rendering judgment for Appellees because (it says) the evidence conclusively establishes as a matter of law that at the time of the injury to the deceased Stone, he was a corporate executive officer of Marju Enterprises, Inc., and therefore was not, and could not be an employee under the worker's compensation policy issued to said corporation because of the absence of an endorsement on said policy specifically showing that he (Stone) was covered by said policy as required by Article 8309, Section 1a, Vernon's Texas Civil Statutes. We sustain this contention and reverse the trial court's judgment and render judgment that Plaintiff-Appellees take nothing.

It is undisputed that at all times material to this lawsuit, the deceased Stone was a corporate executive officer, to wit, vice president of Marju Enterprises, Inc. It is further undisputed that Defendant-Appellant Casualty Reciprocal Exchange had issued and had in force at the time of Stone's injury, a worker's compensation insurance policy to Marju Enterprises, Inc., and that such policy did not have or include an endorsement thereon specifically showing that Stone was covered by such policy. The evidence showed that Stone earned the same salary before and after having assumed managerial duties.

Appellant insurance carrier contends that under Article 8309, Section 1a, as it now reads for a corporate executive officer (as Stone was) to be covered under the policy, Stone's name was required to be endorsed thereon. We agree.

Article 8309, Section 1a, effective September 1, 1975, in its pertinent parts reads as follows:

"Notwithstanding any other provision of this law, a subscriber *may cover* in its insurance contract a partner, a sole proprietor, or a *corporate executive officer*, except an officer of a state educational institution. The *insurance contract shall specifically include the* partner, sole proprietor, or *corporate*

*executive officer*; and the *elected* coverage *shall continue* while the policy is in effect and *while the named individual is endorsed thereon by a subscriber."* (emphasis supplied).

In our opinion the language of this statute is clear and unequivocal in requiring that if a corporation desires to cover a corporate executive officer in its worker's compensation insurance, that corporate executive officer must be specifically named by endorsement on the policy. Conversely, if such corporate officer is not named in an endorsement on the policy, such officer is not covered.

In the case at bar, it was undisputed that Stone at all times material to this controversy was a corporate executive officer, and that his name was not shown by endorsement to be covered under the policy. Under this state of the record, we are of the opinion and hold that the deceased Stone was not covered by the policy at the time he sustained the injuries in question. See *Powell v. Vigilant Insurance Co.* (Tyler, Tex.Civ.App.1979) 577 S.W.2d 364, no writ, wherein the court of civil appeals affirmed a summary judgment in favor of the insurance carrier. In that case Plaintiff Powell was a partner in Ponderosa Motor Inn, a partnership, which had a worker's compensation policy with the defendant carrier. Powell sued for worker's compensation benefits for injuries sustained by him while in the course and scope of his employment for Ponderosa Motor Inn. The insurance policy contained no endorsement providing coverage for the partners, or for Powell as an individual partner. It was there held that Powell had no coverage.

We agree with and follow the reasoning of *Powell*, particularly because Article 8309, Section 1a, lays down the same requirement for a partner as for a corporate executive officer; that is to say, that for either to be covered, the policy must contain an endorsement providing coverage for such partner or corporate officer.

Appellees argue that in looking at the legislative history of Article 8309, Sec-

tion 1a, that the law at the present time is in the same status or position as it was in the case of *Miller's Mutual Cas. Co. v. Hoover* (Tex.Comm.App.1921) 235 S.W. 863, judgment adopted. *Miller's Mutual* held that where the deceased was a corporate officer, but at the time of his injury was also acting as head miller, Section 1a, did not preclude recovery by the deceased, because of the "dual capacity" doctrine. Appellees assert that this "dual capacity" doctrine applies to the present Article 8309, Section 1a, and therefore in our case Stone was acting as an "employee" of Marju Enterprises, Inc., at the time of the gunshot wounds and was thereby covered by the worker's compensation policy. We do not agree.

At the time *Miller's Mutual* was decided, Section 1a, read as follows:

"The president, vice president or vice presidents, secretary or other officers thereof provided in its charter or by-laws and the directors of any corporation which is a subscriber to this act shall not be deemed or held to be an employee within the meaning of that term as defined in the preceding section hereof."

Since the time of *Miller's Mutual*, Section 1a, has been amended several times, the last time being effective as of September 1, 1975, where it reads in the wording hereinabove quoted in this opinion. It would unnecessarily lengthen this opinion to set out the various respective wordings of the intervening changes in Section 1a from the year 1917 to its present wording.

Suffice it to say that under Section 1a as presently worded, in our opinion the "dual capacity" doctrine does not come into play. Under the present statute, the requirement for coverage of a corporate officer has nothing to do with whether he is also an "employee" or not. Whether such corporate officer is also an "employee" is immaterial. In other words, under the present Section 1a, if a corporation chooses to cover a corporate executive officer, the policy must contain an endorsement specifically covering him; otherwise such officer is not covered.

In the case at bar, since the deceased Stone was a corporate executive officer, and since the policy did not contain an endorsement specifically covering him, such deceased had no coverage at the time he sustained the injuries in question.

For these reasons we reverse the trial court's judgment and render judgment that Plaintiff-Appellees take nothing.

REVERSED AND RENDERED.