John R. HARRIS et al., Petitioners,

v.

CASUALTY RECIPROCAL EXCHANGE,
Respondent.

No. C–922.

Supreme Court of Texas.

April 28, 1982.

Rehearing Denied June 9, 1982.

Daugherty, Kuperman, Golden, Carlisle &
Morehead, John F. Morehead, Joel B. Mitch-
ell, Austin, for petitioners.

Michael A. Wash, Austin, for respondent.

POPE, Justice.

This is a workers' compensation case aris-
ing out of the death of Paul C. Stone, Jr.,
who received a fatal gunshot wound on
December 26, 1978, while working at an
Austin, Texas, discotheque called "The
Green House." Stone was a vice-president
and director of Marju Enterprises, Inc.,
which was doing business as "The Green
House." On the night of the shooting, he
was acting as the night manager of the
club, replacing another manager who had
ended his employment several months earli-
er.

The present suit for workers' compensa-
tion benefits was brought by John R. Harris
and Paul C. Stone, Sr., executors of the
deceased Stone's estate, and by the de-
ceased's ex-wife and two minor children.
The suit was filed against Marju Enterpris-
es' compensation insurance carrier, Casualty
Reciprocal Exchange, hereafter referred to
as Casualty. The jury found that Stone
was employed in two capacities and that he
was performing the duties of a substitute
manager when he was shot. The trial court
rendered judgment in accordance with the
verdict, but the court of appeals reversed
that judgment and rendered judgment that
the plaintiffs take nothing. 623 S.W.2d
154. The sole issue on appeal to this court
is whether Stone's status as an officer in
the corporation precluded recovery of bene-
fits accruing under the corporation's work-
ers' compensation policy. We reverse the
judgment of the court of appeals and af-
firm the judgment of the trial court.

Marju Enterprises, Inc. was incorporated on October 21, 1975, by Gerald Hickson, John Pruitt, and Paul Stone. Hickson and Stone were named vice-presidents of the organization. Pruitt became the secretary-treasurer, and Hickson's wife became the corporation's president. All of the officers received a salary for performance of their duties. Besides the four officers, Marju Enterprises, doing business as "The Green House," employed bartenders, bar "backers," waitresses, doormen, a disc jockey, a gardener, a janitor, and a night manager. The last position mentioned, that of the night manager, was left open as of October 1978 by the departure of the acting manager, Frank Beck. From the time of Beck's termination until the shooting in December 1978, Paul Stone assumed managerial duties at the club. Those duties included hiring and firing workers, scheduling work shifts, and overseeing operations of the club during business hours.

Paul Stone was working as the night manager at The Green House on the evening of December 26, 1978. During a confrontation with two patrons who had been asked to leave the club at closing time but had refused to surrender their drinks, a gun was drawn and Paul Stone was shot. He died of the wounds on January 11, 1979.

The record shows that the compensation insurance premium that was paid by Marju Enterprises during the latter part of 1978 was calculated upon a wage base that included the salary of the night manager. The premium was collected during the time Stone served as substitute manager.

Casualty contends that there is no liability for benefits in this case because Paul Stone was never brought within the coverage of Marju Enterprises' compensation policy, as coverage is defined by this state's workers' compensation statute. Tex.Civ. Stat.Ann. arts. 8306–09h. That statute was clearly written for the coverage and protection of "employees" working within the state. Section 1 of article 8309 of the act provides that the term "employee" as used in the context of workers' compensation "shall mean every person in the service of another under any contract of hire, expressed or implied, oral or written...." Tex.Civ.Stat.Ann. art. 8309, § 1. This general definition is followed by section 1a of the same article, which provides more specifically:

(a) Notwithstanding any other provision of this law, a subscriber may cover in its insurance contract a partner, a sole proprietor, or a corporate executive officer, except an officer of a state educational institution. *The insurance contract shall specifically include the partner, sole proprietor, or corporate executive officer*; and the elected coverage shall continue while the policy is in effect and while the named individual is endorsed thereon by a subscriber.

Tex.Civ.Stat.Ann. art. 8309, § 1a (emphasis added). Since it is undisputed in this case that there was no endorsement on Marju Enterprises' policy electing coverage for Paul Stone or any other officer in the corporation, Casualty contends that Stone was not covered by the policy at the time of his death. In response, Stone's survivors point to the jury finding that Stone was hired to work in two capacities. They conclude from this finding that, while Stone was not covered for injuries sustained while acting as an executive officer, he was covered while serving the corporation as an employee/manager.

The position asserted by claimants is frequently referred to as the "dual capacity" doctrine. This rule provides that an executive officer may be considered to be in an employer-employee relationship for workers' compensation purposes if, at the time of an injury, he is performing the tasks of an ordinary employee, as distinguished from his usual executive activities. *Bolnick v. Industrial Commission*, 81 Ill.2d 22, 405 N.E.2d 771 (1980). Section 54.21 of Larson's Workmen's Compensation Law explains the rule in greater detail:

As long as an officer's or director's duties are confined to the executive functions associated with the office, such as policy making, hiring and firing, negotiating of important contracts, and the like,

the compensation act does not apply. It could be argued, of course, that since technically the only true employer is the corporate entity the officers should be ranged on the employee rather than the employer side. This reasoning overlooks the practical fact that some human beings must exert the powers that belong to the employer-corporation, and those persons, the officers and directors, must therefore for compensation purposes be identified with the employer while exercising those powers.

It is quite common, however, especially in small corporations whose demands upon their officers take only a small fraction of their time, to find that the officers also discharge duties which, if performed by anyone else, would unquestionably confer employee status. In such cases, when the normal incidents of employment attend the performance of the non-executive work, it is uniformly held that the compensation act applies. The clearest instances are those in which the officer engages in manual or non-supervisory tasks, as in the case of a corporation president working in a coal yard at two dollars a day under the orders of the general manager, * * * a president and principal stockholder doing selling, manual work, and the like, a secretary-treasurer-director-stockholder doing collection work, or an officer doing sales work on the road or behind a counter. In addition, the vast majority of the cases have awarded compensation even when the employment duties were of a supervisory character, such as those of a general manager, superintendent of a department, foreman, or superintendent of construction, since these are all jobs that, in ordinary circumstances, would make the holder an employee.

*Id., quoted in M. E. Badon Refrigeration Co. v. Badon,* 231 Miss. 113, 95 So.2d 114, 117 (1957). *See also* 99 C.J.S., *Workmen's Compensation,* § 82(b) (1958).

Examination of decisions in various jurisdictions reveals a widespread adherence to the "dual capacity" doctrine. Although the precise version of the rule adopted in a particular state varies according to the wording of the applicable compensation statute,[1] the effect in almost all instances is the same—an officer is not precluded from recovering compensation benefits merely because of his title as an officer, provided he is required to perform some functions in the company similar to work performed by the company's ordinary employees, and provided the claimant is injured while acting in that nonexecutive role. *See Queen City Furniture Co. v. Hinds,* 274 Ala. 584, 150 So.2d 756 (1963); *Brook's, Inc. v. Claywell,* 215 Ark. 913, 224 S.W.2d 37 (1949); *Bolnick v. Industrial Commission, supra; M. E. Badon Refrigeration Co. v. Badon, supra; Updike Advertising System, Inc. v. State Industrial Commission,* 282 P.2d 759 (Okla. 1955); *Alsup v. Murfreesboro Bread & Ice Cream Co.,* 165 Tenn. 591, 56 S.W.2d 746 (1933); *Stotts v. State Compensation Director,* 149 W.Va. 272, 140 S.E.2d 604 (1965). *But see Allen v. State Industrial Accident Commission,* 200 Or. 521, 265 P.2d 1086 (1954); *Melham v. Watertown Sash & Door Co.,* 67 S.D. 254, 291 N.W. 735 (1940).

---

1. Workers' compensation statutes deal with officers in a variety of ways. Some statutes expressly extend coverage to executives. *See, e.g.,* Kan.Stat.Ann. § 44–508(b) (1981); La.Rev. Stat.Ann. § 23:1044 (1964). Some states that extend automatic coverage to officers provide that such coverage may be waived by the employer. *See* Fla.Stat.Ann. §§ 440.02, 440.05 (1981). Some states, like Texas, provide that employers may expressly *elect* coverage of their officers. *See* Miss.Code Ann. § 71–3–79 (1972); W.Va.Code § 23–2–1 (1981). Other states specifically except officers from the provisions of their respective acts, although several of these states also allow an express election of coverage. *See* Idaho Code §§ 72–102(9), –212(6), –213 (1973); Or.Rev.Stat. §§ 656.-027(7), 656.039 (1979). Most state statutes simply contain a general definition of the term "employee" and extend coverage to those persons meeting the broad definition. Judicial determinations are necessary in such instances to decide whether injured officers fall within the act's general provisions. *See* Ariz.Rev.Stat. Ann. § 23–901(4)(b) (1956), *construed in Williams v. Williams Insulation Materials, Inc.,* 91 Ariz. 89, 370 P.2d 59 (1962); Ill.Rev.Stat. ch. 48, para. 138.1, § 1(b)(2) (1980), *construed in Bolnick v. Industrial Commission, supra.*

The "dual capacity" doctrine was first recognized in Texas in *Millers' Mutual Casualty Co. v. Hoover*, 235 S.W. 863 (Tex. Comm'n App.1921, judgmt adopted). In that case, the court awarded compensation benefits for the accidental death of Hoover, an officer of a corporation who was engaged in the work of an employee at the time of his death. The compensation statute applicable at the time of the injury defined the term "employee" as

> every person in the service of another under any contract of hire, expressed or implied, oral or written, except masters of or seamen on vessels engaged in interstate or foreign commerce, and except one whose employment is not in the usual course of trade, business, profession or occupation of his employer.

1917 Tex.Gen.Laws, ch. 103, part 4, § 1 at 291. Section 1a of article 8309 then provided:

> The president, vice president or vice presidents, secretary or other officers thereof provided in its charter or by-laws and the directors of any corporation which is a subscriber to this Act shall not be deemed or held to be an employe within the meaning of that term as defined in the preceding section hereof.

1917 Tex.Gen.Laws, ch. 103, part 4, § 1a at 292.

The court in *Millers' Mutual* held that the language of section 1a was not so clear and unambiguous as to preclude judicial construction and inquiry as to legislative intent. Instead, the court construed what it felt to be an ambiguous statute to provide that only officers and directors who acted in their *executive capacities* were precluded from the benefits of the act. On the other hand, those officers who, like Hoover, acted in a dual capacity, could recover compensation benefits. The court explained its holding:

> The underlying reason for excluding the officers and directors or a corporation as such from the provisions of the act is apparent. The officers and directors of a corporation do not come within the ordinarily accepted meaning of the terms "workmen" and "employes," for whose benefit the legislation is primarily enacted. Their duties toward the corporation and its business are those of managing and directing heads, and they do not, as a rule, perform the ordinary tasks, nor are they subjected to the ordinary risks, of employes or workmen engaged in the service of the corporation. Nor, as a general rule, is their compensation affected by their temporary disability caused by injury while engaged in their employment. On the other hand, where, although occupying an official position with the corporation, they are employed as workmen or employes in the ordinary sense of those terms, and come clearly within the provisions of the act, there would appear to be no substantial reason for excluding them from those benefits merely because they also hold official positions with the corporation; and the Legislature should not be presumed to have intended so to exclude them unless the language employed be clearly not susceptible of any other construction.

*Millers' Mutual Casualty Co. v. Hoover, supra* at 865.

The "dual capacity" doctrine was again applied in Texas in *Cook v. Millers' Indemnity Underwriters*, 240 S.W. 535 (Tex. Comm'n App.1922, judgmt adopted). In *Cook*, the claimant served as director, secretary, treasurer, and general manager (supervisor) of the subscribing corporation. He was injured while discharging his duties as a manager. The court, relying upon *Millers' Mutual* and the "dual capacity" doctrine, held that Cook was not excluded from the benefits of the compensation act merely because he also served as a director and officer of the company.

In an apparent response to *Millers' Mutual* and *Cook*, the Texas Legislature in 1923 amended section 1a to prohibit application of the "dual capacity" doctrine in Texas. The new section provided:

> The president, vice-president or vice-presidents, secretary or other officers thereof provided in its charter or by-laws and the directors of any corporation which is a

subscriber to this Act shall not be deemed or held to be an employe within the meaning of that term as defined in the preceding section hereof, *and this notwithstanding they may hold other offices in the corporation and may perform other duties and render other services for which they receive a salary.*

1923 Tex.Gen.Laws, ch. 177, § B1 at 388 (emphasis added). The new wording left little doubt of an intent that all officers, even those also working as "employees" for a company, could not be covered by the company's compensation policy. *See Bell v. Texas Employers' Insurance Association*, 43 S.W.2d 290, 293 (Tex.Civ.App.—Dallas 1931, writ dism'd); *Lumbermen's Reciprocal Association v. Bohlssen*, 272 S.W. 813, 814 (Tex.Civ.App.—Beaumont 1925, no writ).

The exclusion of "dual capacity" in section 1a remained in effect for over thirty years. Then, in 1965, the legislature reversed its position and extended coverage of the act to *all* officers of a subscribing company, including those officers performing purely executive functions. After the revision, section 1a declared: "Every executive officer elected or appointed and empowered in accordance with the charter and bylaws of a corporation which is a subscriber to this law . . . shall be an employee of such corporation under this law." 1965 Tex.Gen.Laws, ch. 695, § 1 at 1625. The language in the 1923 act precluding application of the "dual capacity" doctrine was deleted.

The blanket coverage provided by the 1965 version of section 1a was short-lived, however. Two years after amendment, article 8309 was again revised, this time to replace automatic coverage of executive officers with an elective system, whereby employers could choose to cover their officers by way of specific endorsements on the company policy. 1967 Tex.Gen.Laws, ch. 192, § 1 at 426. The current version of section 1a, enacted in 1975, retains this provision for optional executive coverage.

■ The court of appeals held in the instant case that the present "unambiguous" wording of section 1a of article 8309 indicates an intention on the part of the legislature to preclude application of the "dual capacity" doctrine in Texas. We do not adopt this construction. Rather, we believe that section 1a more likely manifests an intention to make available by way of a specific endorsement optional coverage of officers who are hired only in an executive capacity or who are injured while performing purely executive duties. Under this interpretation, persons who are hired to fill *both* executive and "employee" positions, and who are injured while performing the latter type of activity, fall squarely within the "employee" definition in section 1 and are thereby covered by the provisions of the act without a specific endorsement. Section 1a has no application in such situations. We adopt this construction because it is consistent with the general purpose of the workers' compensation statute. In short, persons who are "employees" as defined by the act should be allowed to recover employee benefits.

■ We have repeatedly held that the workers' compensation act should be given a liberal construction to carry out the legislative plan of compensating injured workers and their dependents. *See Ward v. Charter Oak Fire Insurance Co.*, 579 S.W.2d 909, 910 (Tex.1979); *American General Insurance v. Williams*, 149 Tex. 1, 5, 227 S.W.2d 788, 790 (1950); *Texas Employers' Insurance Association v. Holmes*, 145 Tex. 158, 164, 196 S.W.2d 390, 394 (1946). In the present case, Paul Stone was killed while acting as a manager for the subscribing corporation. Had the corporation hired another person to perform the work being done by Stone at the time he was killed, and such person had met the same fate as Stone, without question the worker's statutory beneficiaries would have been entitled to recover under the act. Likewise, had Paul Stone been only a night manager, and not also a vice-president of the company, his position would have brought him indisputably within the coverage of the act.

The evidence in the present case showed that Paul Stone was a substitute night manager for the subscribing corporation,

that he was hired to serve in this capacity, that the performance of his managerial duties resulted in the loss of his life, and that he was not acting as an officer of the corporation at the time he was killed. Given these facts, we hold that Stone was an "employee" at the time of his death and thereby came within the provisions of the workers' compensation act, and that the benefits sought by his survivors should have been awarded.

The judgment of the court of appeals is reversed, and the judgment of the trial court is affirmed.