**PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY**

v.

**Frank E. HANNAH.**

No. 09–84–336–CV.

Court of Appeals of Texas, Beaumont.

Dec. 5, 1985.

Rehearing Denied Jan. 2, 1986.

D. Allan Jones, Beaumont, for appellant.

George Michael Jamail, Beaumont, for appellee.

## OPINION

BROOKSHIRE, Justice.

■ Workers' compensation case. The jury found that Appellee received an injury on January 2, 1981, which was a producing cause of permanent, total incapacity. Appellant carrier contends that Special Issue No. 2 was an incorrect submission of the "dual capacity doctrine" under the law and facts of the case subjudice. *See Harris v. Casualty Reciprocal Exchange*, 632 S.W.2d 714 (Tex.1982). Special Issue No. 2 read:

"Do you find from a preponderance of the evidence that, at the time of the injury, Plaintiff was performing the tasks of an ordinary workman in the course and scope of employment for FEH Construction, as distinguished from his usual activities as a Corporate officer for FEH Construction?"

The jury answered "Yes". The main thrust of the objection was that under *Harris, supra,* the test was whether an individual *was hired* to perform both executive and employee-related duties. Issue No. 2 obviously inquired only as to the tasks performed at the time of the injury as distinguished from the tasks to be performed at the time of hiring.

Appellee had personally done construction work, physically, for a number of years. In 1978 or 1979, he started a sole proprietorship called "Hannah Construction Company", doing contracting and subcontracting work. In 1980, he incorporated into a company called "F.E.H., Inc.". He was the President and Vice-President. His then wife was the Secretary-Treasurer. Frank Hannah owned all the stock in the corporation. When F.E.H., Inc., wasn't "running" a construction job, there were 2 or 3 people on the payroll. When F.E.H., Inc., was working and performing a contract or subcontract, it was not unusual to have 15 or 20 persons on the payroll.

Ruby Hannah, as Secretary-Treasurer, did virtually all of the office work, record keeping and accounting duties until a divorce from Frank, granted in May of 1982. In the last part of 1980 and in January of 1981, the corporation was doing construction work for several different larger contractors.

During the first part of January, 1981, there was a cleanup job in a subdivision in Beaumont. Appellee went to this jobsite but did not see his workers there. He stayed until about 10:00 A.M. No workers from F.E.H. Corporation reported on that job for work, although some should have. There were workers of other contractors present. A request was made to Appellee that cleanup work around a catch basin be expedited. Hannah said he would take care of that job. He testified that normally that was not a job that he would perform personally. Hannah said:

"A My normal job is taking care of the work. I also had to work, but I did all my bidding, all my estimating; I had to go see the contractors, pre-job meetings and all this stuff. I always have to do that, too."

He further characterized his job as an officer of the company as generally doing the bidding and public relations work rather than digging ditches or doing back-breaking work but he testified that some days he had to "wear both hats". He said this was true of all "little companies".

The estimated annual premiums for the workers' compensation policy was based on concrete work and concrete construction as well as street and road construction and some iron and steel erection. It was stipulated, in the contract of workers' compensation insurance, that the declarations (of coverage) did not apply to any type of injury, including death, sustained by any executive officer, partner or sole proprietor. While attempting to finish up the cleanup work around the catch basis, Appellee personally sustained the injury upon which the suit was brought.

In *Harris, supra,* the jury found that the worker involved was employed or hired in two capacities and that he was performing the duties of a substitute manager of an Austin discotheque when he was fatally shot, the court determining, at page 714:

"... The sole issue on appeal to this court is whether Stone's status as an officer in the corporation precluded recovery of benefits accruing under the corporation's workers' compensation policy."

After reviewing the legislative history of present TEX.REV.CIV.STAT.ANN. art. 8309, sec. 1a (Vernon Supp.1985), the court, in *Harris, supra,* wrote at page 718:

"The court of appeals held in the instant case that the present 'unambiguous' wording of section 1a of article 8309 indicates an intention on the part of the legislature to preclude application of the 'dual capacity' doctrine in Texas. We do not adopt this construction. Rather, we believe that section 1a more likely manifests an intention to make available by way of a specific endorsement optional coverage of officers who are hired only in an executive capacity or who are injured while performing purely executive duties. Under this interpretation, persons who are hired to fill *both* executive and 'employee' positions, and who are injured while performing the latter type of activity, fall squarely within the 'employee' definition in section 1 and are thereby covered by the provisions of the act without a specific endorsement. Section 1a has no application in such situations. We adopt this construction because it is consistent with the general purpose of the workers' compensation statute. In short, persons who are 'employees' as defined by the act should be allowed to recover employee benefits.

"We have repeatedly held that the workers' compensation act should be given a liberal construction to carry out the legislative plan of compensating injured workers and their dependents. [Citing cases]"

We find that the carrier's objections to Special Issue No. 2 were correct and remand the case for new trial.

█ The carrier also argues that there is no evidence that Hannah was an "employee" for the purpose of the Texas Workers' Compensation Act. TEX.REV.CIV.STAT. ANN. art. 8309, sec. 1 (Vernon 1967) defines "Employer" as meaning "any ... corporations ... that makes contracts of hire." Section 1 provides:

" 'Employee' shall mean every person in the service of another under any contract of hire, expressed or implied, oral or written...."

TEX.REV.CIV.STAT.ANN. art. 8309, sec. 1a (Vernon Supp.1985) provides:

"(a) Notwithstanding any other provision of this law, a subscriber may cover in its insurance contract a partner, a sole proprietor, or a corporate executive officer, except an officer of a state educational institution. The insurance contract shall specifically include the partner, sole proprietor, or corporate executive officer; and the elected coverage shall continue while the policy is in effect and while the named individual is endorsed thereon by a subscriber." (Effective September 1, 1975)

Appellee, Hannah, concedes that he had no such specific inclusion for a corporate executive officer by way of the statutorily required endorsement. We disagree with the carrier's position that there was "no evidence" that Frank Hannah was an "employee" for the purposes of the compensation act.

There is a phase or string or strain of evidence which is more than a scintilla that Hannah did actual physical labor prior to the date of incorporation of F.E.H., Inc., and continued, at least in some instances, to do the same type of work after incorporation. Evidence exists in the record that actual change, after incorporation, in the operation of the small construction company was minimal and without meaningful significance as compared to before incorporation. By circumstance and inference, then, we think the record, when tested

against a "no evidence" point, raises the issue that Hannah was hired by the corporation in a "dual capacity" as President, Vice-President, Executive Officer on the one hand and as a manual laborer on the other. Appellate review of "no evidence" points has been settled. We are to consider only the evidence favorable to the verdict and we are to indulge reasonably in all inferences therefrom—again, in favor of the verdict. We are to disregard all evidence to the contrary and to disregard all inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *Potter v. Garner*, 407 S.W.2d 537 (Tex.Civ.App.—Tyler, 1966, writ ref'd n.r.e.); Robert W. Calbert " 'No Evidence' and 'Insufficient Evidence' Points of Error", 38 Texas L.Rev. 361 (1960); Garwood "The Question of Insufficient Evidence on Appeal", 30 Texas L.Rev. 803 (1952).

■ Appellant objected to the submission of the issues on determining the wage rate, contending that the issue asking if another employee of the same class worked at least 210 days of the year immediately preceding the injury would be appropriate and correct only if predicated upon a prior issue which held that Hannah failed to work 210 days of the year preceding the accident. In view of the remand, depending on the evidence at the retrial, we deem it to be the better practice to submit an issue, being a negative submission, inquiring if Appellee did not work as many as 210 days in the year preceding the injury in the employment in which he was working on the date of injury. See 2 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 23.02 (1970). Appellee says this evidence is uncontradicted. But the evidence is from an interested party, the Appellee, as is conceded in his brief. We hold the carrier had a right to submit this issue to the jury. *Texas Employers' Insurance Association v. Shannon*, 462 S.W.2d 559 (Tex.1970); *Texas Employers' Ins. Ass'n v. Ford*, 153 Tex. 470, 271 S.W.2d 397 (1954).

The Legislature has mandated a method for pecuniary recovery in workers' compensation cases, which is determined by the claimant's wage rate. The Solons have mandated the burden of establishing the wage rate is upon the claimant. The worker has the burden of showing that his wages cannot be computed under TEX. REV.CIV.STAT.ANN.art. 8309, sec. 1(1) (Vernon 1967), before a resort can be had to sec. 1(2). Even though there is not contradicting evidence in the record, if the evidence on this point is from an interested party, the better practice is to obtain a negative jury finding following 2 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 23.02 (1970). The jury does not have to believe *the interested party*. Appellee, by summary in his brief, shows that the claimant was the one who testified that he did not work 210 days in the capacity of a laborer during the year preceding the occurrence. Since Appellee is an interested party seeking money compensation, the negative submission would be the better practice.

■ The carrier also contends that a motion for judgment notwithstanding the verdict should have been granted because there was no evidence establishing good cause for Hannah's failure to timely file his "Notice of Claim". Hannah filed his claim for compensation with the board on September 23, 1981. The Employer's First Report of Injury was not received by the board until January 4, 1982. January 4, 1982, appears to be the date that F.E.H., Inc., first report of injury was filed with the Industrial Accident Board. TEX.REV. CIV.STAT.ANN. art. 8307, sec. 7a (Vernon Supp.1985) provides that where the association or subscriber has knowledge of an injury and fails, neglects or refuses to file a report thereof, then the limitation set out in TEX.REV.CIV.STAT.ANN. art. 8307, sec. 4a (Vernon 1967), in respect to the filing of a claim for compensation, shall not begin to run against the said claim until such report has been furnished as required by art. 8307, sec. 7 (Vernon 1985). Section 4a, of course, provides, along with notice of the injury, the filing of a claim for compen-

sation with respect to such injury shall have been made within 6 months after the occurrence of the injury. In this point of error, the carrier took the position that there was "no evidence" establishing good cause for late filing. It is overruled.

REVERSED AND REMANDED for a new trial not inconsistent with this opinion.