85 So.2d 556 (1956)
The MIAMI BEACH FIRST NATIONAL BANK and Old Colony Insurance Company, Petitioners,
v.
Elma DUNN and the Florida Industrial Commission, Respondents.
Supreme Court of Florida. Division B.
February 15, 1956.
*557 Frank A. Howard, Jr., and Dixon, DeJarnette, Bradford & Williams, Miami, for petitioners.
Burton B. Loebl, Miami Beach, for Elma Dunn.
Rodney Durrance, Tallahassee, for Florida Industrial Commission.
ROBERTS, Justice.
We here review, on certiorari, an order of the Florida Industrial Commission entered in a workmen's compensation proceeding. The facts and the point at issue here are stated in the order, which reads as follows:
"This cause came on to be heard upon application of the employer and carrier for review of an order of the Deputy Commissioner dated May 26, 1955, dismissing the request of the insurance carrier for a hearing to adjudicate the degree of the employee's permanent partial disability, which request was submitted after the carrier had completed payment to the claimant of compensation for 10 per cent permanent partial disability of her hand and had filed with the Commission a Final Settlement Report with respect to the claim.
"The employee received an injury by accident arising out of and in the course of her employment with the employer on February 23, 1953, when she injured her right wrist in attempting to operate an indorsing machine, and she filed a claim for compensation on August 14, 1953. The Deputy Commissioner entered an order on September 24, 1953, requiring the employer by its carrier to pay the employee compensation for temporary total disability `during the period that claimant is temporarily and totally disabled.' Pursuant to this order the carrier paid the claimant compensation for temporary total disability until July 23, 1954, at which time Dr. Kushner reported that she had reached maximum degree of recovery and had been rated as having a 10 per cent permanent partial disability of her hand. Accordingly, on said date the carrier considered that the payment of compensation for temporary total disability pursuant to the order of the Deputy Commissioner had been completed, and the carrier commenced paying the employee compensation for permanent partial disability on the basis of said rating, continuing same for a period of 17 1/2 weeks. On November 19, 1954, the carrier filed with the Commission a notice that compensation had been suspended, effective November 23, 1954, for the reason that payment for permanent partial disability had been completed. Thereafter, on February 25, 1955, the carrier filed with the Commission an Injury Progress and Final Settlement Report on Commission Form F.I.C. 13, in which it reported having paid claimant $1,485.00 for temporary total disability, and $525.00 for permanent partial disability, the latter representing compensation for 17 1/2 weeks at $30.00 a week. In said report the carrier listed date of final payment as November 23, 1954, and date case closed as February 23, 1955. Section 440.15(3) (c) of the Workmen's Compensation Law [F.S.A.] provides that compensation shall be paid for 175 weeks for the loss of a hand, and Section 440.15(3) (s) of said Law provides that compensation for permanent partial loss or loss of use of a member may be for proportionate loss or loss of use of *558 the member. Thus, compensation for permanent partial disability consisting of 10 per cent loss of use of a hand would be for 10 per cent of 175 weeks or 17 1/2 weeks; and compensation for permanent partial disability was paid to the claimant for 17 1/2 weeks according to the said Injury Progress and Final Settlement Report filed by the carrier.
"In the meantime, on January 26, 1955, the carrier by its counsel filed with the Commission a request that a hearing be held before the Deputy Commissioner `for confirmation upon the record of the benefits furnished to date and the rating upon which payments for permanent partial disability were paid.' At that time there was no claim by the employee pending before the Commission for any further compensation or medical benefits. The carrier contended that under Section 440.20(8) of the Workmen's Compensation Law it was the duty of the Commission to adjudicate the status and rights of the parties.
"After duly holding a hearing on April 5, 1955, the Deputy Commissioner entered an order on May 26, 1955, dismissing the request of the carrier for an adjudication of the degree of the permanent partial disability of the employee. In dismissing said request of the carrier for an adjudication in confirmation of the rating upon which payments for permanent partial disability had been paid, the Deputy Commissioner pointed out that after payments to the employee for temporary total disability had been concluded no claim for further compensation was filed by the employee and neither the Law nor the administrative practice of the Commission supports the contention of the carrier that it is entitled to such adjudication after having completed payment without an award of compensation for permanent partial disability.
"The Florida Workmen's Compensation Law contemplates that compensation shall be payable thereunder without an award, as indicated by the provision of Section 440.20(1) that, `Compensation under this chapter shall be paid periodically, promptly in the usual manner and directly to the person entitled thereto, without an award, except where liability to pay compensation is controverted by the employer.' For this reason the Law is commonly referred to as being `automatic' or `self-executing.' It is only when an employer fails to pay compensation when due or controverts the right to compensation, that resort to the claim, hearing, and determination provisions of the Act becomes necessary.
"In its application for review the carrier contends that under Section 440.20 (8) of the Act the employer and carrier are entitled to a hearing `for the purpose of determination upon the record of their rights and obligations with respect to the benefits furnished to the claimant.' In support of this position it cites Superior Home Builders v. Moss, Fla., 70 So.2d 570. The said Section 440.20(8) provides that the Commission shall in any case (1) where right to compensation is controverted, or (2) where payments of compensation have been stopped or suspended, make such investigations, cause such medical examination to be made, or hold such hearings, and take such further action as it considers will properly protect the rights of all parties. This is not a case in which right to compensation is controverted. Compensation was paid by the carrier without an award for permanent partial disability, and no claim has been made for any further or additional compensation. Neither is this a case in which `payments of compensation have been stopped or suspended,' within the meaning of this subsection. When construed pari materia with reference to other provisions of the Act, the phrase evidently and logically refers to compensation being stopped or suspended before payment of compensation due or claimed to be due has been completed. Where payment of compensation is terminated because payment of all compensation payable has been completed, the situation is governed by the immediately preceding subsection 440.20(7), which provides that within thirty days after final payment of compensation *559 has been made, the employer shall send to the Commission a notice, in accordance with a form prescribed by the Commission, stating that such final payment has been made and setting forth certain other information. (This the carrier did in this case by report filed February 25, 1955.)
"It would be ridiculous and impose an almost impossible administrative burden to interpret the Act to require the Commission to cause a medical examination to be made in every case after final payment of compensation has been made. Likewise, it would impose an almost impossible administrative burden to interpret the Act to require the Commission to hold a hearing and make a formal adjudication of `the rights of all parties' in each of the many thousands of cases in which final payment of compensation is made each year. Such adjudication in the absence of any claim for further or additional compensation would operate to foreclose the right of the employee under Section 440.19(1) of the Act to file a claim for permanent partial disability `within two years after the date of the last payment' of compensation made without an award, thereby relegating the employee to the procedure of Section 440.28 in the event he decided to claim additional compensation, a procedure limited to cases involving a change in condition or a mistake in a determination of fact.
"Assuming arguendo, however, that said Section 440.20(8) is applicable under the facts of the instant case, it does not require that the Commission either hold a hearing or make a formal adjudication in each case in which payments of compensation have been stopped or suspended. It merely provides that in such case the Commission shall make such investigation, cause such medical examination to be made, or hold such hearings, and take such further action as it considers will properly protect the rights of all parties. Thus, the Commission is given wide discretion as to the procedure it will follow and the action it will take to `properly protect the rights of all parties.' No requirement is included that in such case the Commission must enter an order making a formal adjudication of the employee's degree of disability. In all such cases the Commission through its established administrative procedures does make `such investigation' and `take such further action as it considers will properly protect the rights of all parties.' Sections 440.18 and 440.36 of the Act require the employee and the employer or carrier to submit specified reports in respect of the injury to the Commission from time to time, and Section 440.20 requires certain additional notices and reports, including a notice of final payment containing specified information; and Section 440.13 requires that the attending physician or physicians furnish certain reports. To implement these statutory provisions the Commission has in effect thirteen regulations relating to `Reports to be Filed in All Injury or Death Cases Coming within the Purview of the Florida Workmen's Compensation Act.' The Commission has a staff of Examiners who in each case examine, audit, check, and compare the information contained in the various reports submitted from time to time by the employee, employer, carrier, and attending physicians, including the final settlement report. When it appears that the respective parties are complying or have complied with the provisions of the Act, that no controversy exists between the parties, and that the injured employee is receiving or has received the compensation and medical attention to which he appears entitled on the basis of all reports submitted including medical reports, no further investigation, medical examination, hearing, or other affirmative action by the Commission is considered necessary to properly protect the rights of all parties. On the other hand, when an Examiner finds any apparent irregularity, failure in compliance, controversy, or delay, stoppage or suspension in the payment of compensation due or the furnishing of medical treatment required by the nature of the injury or the process of recovery, he takes `such further action' as appears necessary to `properly protect the rights of all parties.' Such further action may include an investigation, referral of the file to a Deputy Commissioner for an informal conference with the parties, or *560 a hearing before a Deputy Commissioner, and may or may not require entry of a compensation order or other formal adjudication by the Deputy.
"The carrier contends in this case that in the absence of `determinative action' by the Commission the normally applicable periods of limitation prescribed in the Act are suspended, as a result of which the employer and carrier remain exposed indefinitely to claims for further or additional compensation and medical benefits. We do not agree. The carrier has complied with the order of the Deputy Commissioner that it pay the employee compensation for temporary total disability `during the period that claimant is temporarily and totally disabled,' and in addition thereto, without an award, it has paid the employee certain compensation for permanent partial disability. The employee has made no claim for further or additional compensation. Section 440.19 of the Act (1953) specifically provides that the right to compensation for disability shall be barred unless a claim therefor is filed within two years after the injury, except that if payment of compensation has been made without an award a claim may be filed within two years after the date of the last payment. (Italics supplied.) Since payment of compensation for permanent partial disability has been made without an award, any claim for further or additional compensation would be barred unless a claim therefor is filed within two years after the date of the last payment. If it were deemed that in a broad sense all the compensation paid to the employee herein was pursuant to the compensation order of September 24, 1953, under Section 440.28 of the Act the employee cannot claim further compensation unless she does so `prior to two years after the date of the last payment of compensation'. Accordingly, either way the carrier is protected by the limitations prescribed in the Act, and the employee's right to make a claim for further compensation `at any time prior to two years after the date of the last payment of compensation' should not be foreclosed by a permature adjudication made at the request of the carrier. As to medical attention, Section 440.13(3)(b) provides that all rights for remedial attention shall be barred unless a claim therefor is filed within two years after the date of the last remedial treatment furnished by the employer, or after the date of the last payment of compensation.
"The opinion in Superior Home Builders v. Moss, supra, is not applicable as it was limited to holding that the then one year limitation provided in Section 440.28 of the Act applied only where an employee sought modification of an award. In that case the employee did not seek `modification' of the original award dated July 23, 1951, but made claim on February 13, 1953, for additional compensation and medical treatment. The `matter was still open for such an adjudication' because the employee presented his claim for such additional compensation `within two years after the time of injury' pursuant to Section 440.19."
The commission's interpretation of the relevant provisions of the Workmen's Compensation Act seems logical and reasonable to us; and, under the familiar rule that an administrative interpretation of an Act will not be overturned "except for the most cogent reasons, and unless clearly erroneous", King v. Seamon, Fla. 1952, 59 So.2d 859, 861, we adopt its interpretation as that of this court.
We also agree with the Commission that there is nothing in Superior Home Builders v. Moss, Fla. 1954, 70 So.2d 570, that requires a different holding. That case is authority only for the proposition that, in the absence of a final order adjudicating that the carrier has discharged its obligation to the claimant in full, the claimant may file a claim for additional compensation within the two-year limitation period prescribed by Section 440.19, Fla. Stat. 1953, F.S.A., and is not required to proceed under Section 440.28, Fla. Stat. 1953, F.S.A. with its concomitant requirement of a showing of a change in condition or a mistake in a determination of fact.
For the reasons stated, certiorari should be and it is hereby
Denied.
DREW, C.J., and THOMAS and O'CONNELL, JJ., concur.