426 So.2d 1243 (1983)
H.G. BODDIFORD PAINTING CONTRACTORS, INC., and Safeco Insurance Companies, Appellants,
v.
H. Grady BODDIFORD, Appellee.
No. AE-429.
District Court of Appeal of Florida, First District.
February 10, 1983.
Ivan Matusek, St. Petersburg, for appellants.
T. Terrell Sessums, P.A., of Albritton, Sessums & McCall, Tampa, for appellee.
ERVIN, Judge.
In this worker's compensation case, the employer/carrier (e/c) contends that the deputy commissioner (deputy) erred, first, in not allowing a credit for temporary total disability (TTD) benefits over-paid, and second, in not allowing a set-off, corresponding to claimant's "actual earnings," against permanent total disability (PTD) benefits. Central to both contentions is whether claimant received a "salary" or *1244 "actual earnings" from the employer after the industrial accident. We disagree with the e/c's position and therefore affirm the deputy's order in its entirety.
Claimant established H.G. Boddiford Painting Contractors in 1968 and had developed it into a PROFITABLE OPERATION BY 1978. iN October of that year the business was incorporated as a closely held corporation with claimant as its sole shareholder. On November 9, 1978, claimant suffered an industrial accident causing injury to his back. Prior to the accident he was in full charge of the business, working 12 to 14 hours daily, seven days a week, despite back problems resulting from two prior industrial accidents in 1956 and 1968. Although surgery in December of 1978 provided some relief, claimant continued to experience extreme pain in his right leg and back and to suffer severe physical limitations. Claimant's physicians and the e/c are in agreement that claimant is 100% physically disabled at this time. Because of the limitations placed on claimant's physical activities since the accident, the day-to-day operation of the business was assumed by claimant's wife, two sons and a trusted employee. Claimant's contribution to the business has been limited to serving in a consulting capacity and to the signing of checks.
At the time of the accident, claimant's stipulated average weekly wage was $692.31. The deputy found that claimant did not receive any salary for the last few months of 1978, but began receiving payments designated as "salary" in the amount of $3,000.00 per month in 1979. On March 1, 1980, claimant resigned as president of the corporation and has received no monies for salary from that date. The primary issue before the deputy was whether the monies received by claimant after the accident constituted a return on his investment in the corporation in the form of profits or whether they were wages actually earned. The deputy agreed with claimant that such monies were profits and not wages.
The e/c voluntarily accepted claimant as temporarily totally disabled (TTD) from November 9, 1978 until November 6, 1979, when he reached maximum medical improvement, and also paid the appropriate TTD benefits during that period. Claimant was then accepted as permanently totally disabled (PTD) as of November 6, 1979 and PTD benefits were paid by the e/c until June 22, 1980, when such benefits were stopped. It was the e/c's position before the deputy and before this court that although claimant was voluntarily accepted as TTD and later as PTD, he is not entitled to full compensation because he continued to receive wages from the corporation, as contemplated by Section 440.15(1)(d), which were equal to his wages before the injury, therefore he is not losing wages. Credit was sought first for the TTD benefits allegedly over-paid.
Temporary total disability has been defined as the "healing period during which a claimant is by reason of the injury totally disabled and unable to work." Fort Pierce Utilities v. Blotney, 396 So.2d 852, 853 (Fla. 1st DCA 1981). We have consistently held that it is error to award TTD benefits to a claimant who is capable of obtaining and performing some type of work. See Blotney (claimant working full-time in non-sheltered employment); McDonnell Douglas v. Holliday, 397 So.2d 366 (Fla. 1st DCA 1981) (claimant working as a baby sitter); Dixie County School Board v. Stinson, 393 So.2d 661 (Fla. 1st DCA 1981) (claimant returned to work as a teacher); Burger King Corporation v. Stark, 401 So.2d 1173 (Fla. 1st DCA 1981) (claimant working for a real estate company). Because the claimant in the present case continued to receive monthly payments from the corporation which were designated by the company bookkeeper as "salary" during the period of TTD, the e/c contends that the payments were improper, thus entitling the e/c to a credit against PTD benefits.
We have recognized that when an overpayment is made in any category of compensation benefits, it is presumed that such overpayment is a gratuity and it becomes incumbent upon the e/c to demonstrate a reasonable basis for the overpayment. "If the Deputy finds such a basis the *1245 presumption is dissipated and he may allow the overpayment to be applied as a credit against compensation ultimately found to be due even though the compensation may be of another class." Belam Florida Corporation v. Dardy, 397 So.2d 756, 758 (Fla. 1st DCA 1981). The entitlement to a credit, however, presupposes that an overpayment has been made. In this case an overpayment could only have occurred if claimant was not TTD from November 9, 1978 until November 6, 1979. We do not consider that the mere fact that claimant was receiving monies, however designated, from his closely held corporation demonstrates that he was capable of doing some type of work. A review of the record shows by competent and substantial evidence that claimant was indeed TTD during that period and was therefore entitled to receive TTD benefits. The deputy was therefore correct in not allowing a credit for the alleged overpayment.[1]
When claimant reached maximum medical improvement on November 6, 1979, the e/c voluntarily accepted him as PTD and began paying the appropriate benefits. It was stipulated that the e/c suspended those benefits as of June 22, 1980. The e/c contends that an overpayment was made in PTD benefits because claimant was still receiving monies designated as salary from the corporation until the time he resigned as president on March 1, 1980. The argument, then, is that PTD benefits should have been reduced accordingly. In considering this issue the deputy found that, although claimant was incapable of lending any active physical service to the corporation, he was able to, and was in fact, rendering consulting services which were, according to the deputy, worth approximately $200.00 per week.[2] This brings us to the central issue of whether claimant was receiving "actual earnings" which would require a reduction in the amount of benefits to which he was entitled. The deputy correctly concluded that the issue must be determined with reference to Section 440.15(1)(d), Florida Statutes (1977), which provides:
If an employee who is being paid compensation for permanent total disability shall become rehabilitated to the extent that he shall establish an earning capacity by employment he shall be paid during the period of such employment, instead of the compensation provided in paragraph (a), 60 percent of the difference between his average weekly wages at the time the total disability was incurred and his wage-earning capacity as determined by his actual earnings in such employment.

(emphasis supplied). The clear terms of that section indicate that a claimant receiving PTD benefits must be shown to have established a wage-earning capacity through (1) employment and (2) receipt of actual earnings before a reduction in benefits is required. Here, the deputy found that claimant was not receiving "actual earnings," therefore no reduction was justified.
The e/c urges that the deputy's finding was in error and relies on Delta Terrazzo, Inc. v. Jones, IRC Order 2-3467 (June 30, 1978) to support its position. Delta Terrazzo found that the claimant was in fact employed, although sporadically, and was receiving actual earnings. Section 440.15(1)(d) was held to apply to situations of sheltered employment as well as to full-time non-sheltered employment. In determining what degree of wage-earning capacity was required to trigger that section, the Commission concluded that the general wage-earning capacity found in other sections *1246 of the Worker's Compensation law was not contemplated; rather, it is a limited type of wage-earning capacity which must be demonstrated by receipt of wages, i.e., "actual earnings," from a specific job. It is axiomatic then that if no "actual earnings" are received from employment, no adjustment of benefits is justified.
Although we have found no Florida cases addressing the issues presented in this unique factual situation,[3] we find that the general rule is that "income from a business owned by the claimant, even though he contributes some work to it, should not be used to reduce disability." 2 Larson, The Law of Workmen's Compensation § 57.51 (1981) (hereinafter: Larson). That rule is premised, in part, on the recognition that a claimant need not be "entirely out of commission to be awarded compensation for total permanent disability." Richardson v. City of Tampa, 175 So.2d 43, 45 (Fla. 1965). See also, Larson § 57.51. The proper scope of inquiry is thus not whether a claimant is receiving some monies which enable him to sustain himself, but whether, despite his status as PTD, he has a wage-earning capacity. "The ability to perform limited service in one's own or a family enterprise may not of itself be sufficient to negate industrial unemployability. The question in that kind of situation is the worker's ability to sell his services in a competitive job market." Germain v. Cool-Rite Corporation, 70 N.J. 1, 355 A.2d 642, 646 (1976).
Courts in a number of other jurisdictions have held that where claimants receive income from unrelated businesses, which they either own or manage, such income does not constitute "earnings" or "wages" so as to reduce PTD benefits to which they are entitled. See, Sproul v. Industrial Commission, 91 Ariz. 128, 370 P.2d 279 (1962) (claimant and wife began managing cafe after industrial accident); Armstrong v. Allstate Insurance Co., 135 Ga. App. 278, 217 S.E.2d 486 (1975) (claimant purchased convenience store after accident which was operated by his family); Bertsch v. Varnum Lumber & Fuel Co., 303 Minn. 545, 228 N.W.2d 228 (1975) (claimant and wife earned "marginal income" from family upholstery business begun after accident); Chatfield v. Industrial Accident Board, 140 Mont. 516, 374 P.2d 226 (1962) (claimant received monies from capital investment, with son, in dairy farm after accident). More importantly, it has been held that where a claimant, as in this case, is the sole or primary owner of the business from which he seeks compensation benefits, monies received by virtue of his status as owner or stockholder will not be characterized as "earnings" or "wages" for purposes of determining the degree of disability suffered by such claimant and his entitlement to benefits. Especially persuasive, we find, is the case of Nudo v. Nudo Brothers Equipment Corporation, 65 A.D.2d 854, 410 N.Y.S.2d 152 (1978), in which the claimant owned 96% of the stock and was an officer in the closely held corporation from which he sought benefits. After his industrial accident, claimant contributed some non-physical services to the business and he received monies under a company "wage continuation plan." Nevertheless, the New York court found that he was not receiving earnings, and that a reduction in his benefits was not justified. See also *1247 Connolly v. Workmen's Compensation Appeal Board, 8 Pa.Cmwlth. 99, 301 A.2d 109 (1973), in which the claimant bought his employer's business after the industrial accident and continued, primarily with the help of his wife, to operate it thereafter. In such a situation,
profits derived from a business are not to be considered as earnings and cannot be accepted as a measure of loss of earning power unless they are almost entirely the direct result of personal management and endeavor.
Id. 301 A.2d at 112 (emphasis supplied by court).
In the present case the deputy's conclusion that claimant had no "actual earnings" within the meaning of Section 440.15(1)(d), Florida Statutes, is thus supported by what we find to be the weight of authority in other jurisdictions which have previously addressed this issue.[4] Because we find that the deputy's order is therefore not erroneous as a matter of law and because there was competent, substantial evidence in the record to support his factual conclusions, we affirm his findings on this issue.
As a third point the e/c contends that the deputy erred in awarding PTD benefits when there was no dispute between the parties as to claimant's PTD status. We find that point devoid of any merit. At the outset of the hearing called to determine claimant's entitlement to PTD benefits, the e/c represented that it had voluntarily accepted claimant as PTD and that his status as such was not in dispute. The record supports the e/c's position that claimant was accepted as TTD and then as PTD, but it also shows that on June 22, 1980 benefits were suspended. Claimant was then forced to file a claim to determine his entitlement to PTD benefits from that date and continuing until such time as he is no longer PTD. Other than its brief statement at the beginning of the hearing, no objections were raised by the e/c to the introduction of numerous exhibits attesting to the fact that claimant was PTD. The e/c now urges that the deputy had no authority to find that claimant was PTD and to award benefits accordingly. Reliance is placed on Florida Tile-Sikes Corp. v. Roberts, 9 FCR 196 (1975), for the proposition that a voluntary acceptance of PTD status leaves no issue for adjudication. Although that conclusion was reached by the Commission in Florida Tile, it must be noted that no evidence was presented to indicate that the claimant had ever been denied benefits. It is important also to understand that the Commission's order relied upon the following quote from the opinion of the Florida Supreme Court in Miami Beach First National Bank v. Dunn, 85 So.2d 556 (Fla. 1956), to support its conclusion that the award of benefits was unjustified:
"The Florida Workmen's Compensation Law contemplates that compensation shall be payable thereunder without an award, as indicated by the provision of Section 440.20(1) that, `Compensation under this chapter shall be paid periodically, promptly in the usual manner and directly to the person entitled thereto, without an award, except where liability to pay compensation is controverted by the employer.' For this reason the Law is commonly referred to as being `automatic' or *1248 `self-executing.' It is only when an employer fails to pay compensation when due or controverts the right to compensation, that resort to the claim, hearing, and determination provisions of the Act becomes necessary.["]
Florida Tile at 196-197 (citing Dunn at 558) (emphasis supplied). Dunn thus instructs that unless the e/c (1) fails to pay compensation when due, or (2) controverts the right to compensation, a claimant need not resort to the claim process and, if he does so despite voluntary acceptance of his condition by the employer, an award of benefits is not proper.[5]
The e/c also urges that this court's decision in Sperry Remington Office Machines v. Stelling, 383 So.2d 1150 (Fla. 1st DCA 1980), compels a finding that the deputy had no authority to award benefits to claimant. Stelling is, however, factually distinguishable from this case in that the e/c in Stelling voluntarily accepted claimant as 20% PTD and paid benefits accordingly. The claimant, contending that he was 100% PTD, then filed a claim for increased benefits. Before a hearing was held on the matter, the e/c began voluntary payment of TTD benefits and, when they accepted claimant as PTD, began making appropriate payments which they continued to do at the time of the hearing. This court concluded that the deputy's award of benefits, under those facts, constituted technical error and struck the decretal portion of the order.
We do not find Stelling to control a situation such as this, involving the cessation of PTD payments to a claimant who was entitled to them and was then forced to resort to the claim process and, in so concluding, we are particularly persuaded by the recent decision of Fair-Way Restaurant v. Fair, 425 So.2d 115 (Fla. 1st DCA 1982), wherein the e/c, after voluntarily accepting the claimant as PTD before the hearing, contended on appeal, as in this case, that the deputy had erred in adjudicating the claimant as PTD. In rejecting that contention it was stated that
[a]lthough this court's opinion in Sperry Remington Office Machines v. Stelling, 383 So.2d 1150 (Fla. 1st DCA 1980), indicates that it is at least a "technical error" for the deputy commissioner to adjudicate claimant PTD where the employer/carrier has accepted him as PTD before the hearing, the language of the Florida Supreme Court in Andrews v. Strecker Body Builders, 92 So.2d 521 (Fla. 1957), seems to imply that such stipulations by the employer/carrier do not deprive the deputy of jurisdiction, but that the inclusion in his order of such matters is within the discretion of the deputy.
425 So.2d at 116.[6] We agree with the conclusion reached in Fair and therefore find that the deputy, in this case, had authority to award PTD benefits to claimant if he found there was competent, substantial evidence to support such an award, and we affirm his decision to do so.
Finally, the e/c asks this court to find that the deputy erred in stating in his order that the parties had "stipulated" to *1249 the fact that claimant was PTD. Our review of the record reveals that the e/c is correct that no actual stipulation on that point was made, although the e/c acknowledged, at the start of the hearing, that there was no dispute concerning the fact that claimant was indeed PTD. This technical error could have been readily corrected within the 20 days before the order became final, but no attempt to do so was made. Therefore, we shall not correct it at this late date. See Acosta Roofing Company v. Gillyard, 402 So.2d 1321 (Fla. 1st DCA 1981).
The deputy's order is affirmed in all respects.
SHIVERS, J., concurs.
WENTWORTH, J., specially concurs with opinion.
WENTWORTH, Judge, concurring specially.
Although I agree with affirmance in this case, and with the majority's excellent analysis of the first two points argued by appellants, I would recognize that our determination of wage earning capacity by actual earnings under § 440.15(1)(d) cannot be guided by decisions on wage earning capacity for permanent total disability purposes generally. I would also note that the statute makes no distinction between earnings by physical and non-physical services.
With respect to the terminology of the award of benefits "during the continuance of the Claimant's permanent total disability," I find no reversible error although the decretal language might more properly have been an award of delinquent PTD payments based on denial of off-set for earnings pursuant to § 440.15(1)(d).[1] The Sperry decision, as to "technical" impropriety of an award of PTD benefits (when such status is conceded two days before hearing, six months after claim, and one year after MMI), was not in my opinion correct upon the facts in that case, but in any event it has no pertinence to this case.
NOTES
[1] We note that the deputy's order is silent on the issue of the e/c's entitlement to a credit for allegedly over-paid TTD benefits. We have, as have both parties, assumed for purposes of this appeal that the deputy denied the e/c's claim for a credit.
[2] There is nothing in the record to support the deputy's assumption that the consulting services were worth approximately $200.00 per week and we must assume that this is an arbitrary figure used to indicate that the services had some value to the corporation. Since there was competent substantial evidence to support the deputy's finding that no actual earnings were received, the presumed value of claimant's services is irrelevant.
[3] The IRC had occasion to address a similar issue in Davidson v. University of Florida, 9 FCR 311 (1975), in which the claimant, after sustaining an industrial accident which left him confined to a wheelchair, made capital investments in several businesses operated by a friend. The employer contended that claimant was thus a "self-employer" and that profits received from such business investments were earnings which justified a reduction in claimant's benefits. In rejecting that position, the IRC concluded that the Judge of Industrial Claims had erred in finding that "claimant's involvement as a capital investor in a business demonstrates a wage earning capacity." Id. at 312. That result has led one commentator to reflect that

[i]f no wages or ordinary income are received from the capital investment, the return or lack of return from a capital investment has nothing to do with a claimant's ability to compete upon the open labor market. A wealthy person might be a permanent total under the Act  the purpose of the Act is to compensate for disability, not to discriminate between rich and poor.
Alpert, Florida Workmen's Compensation Law § 11.1 (3d ed. 1978).
[4] We find further support for the position that profits from businesses do not amount to earnings for purposes of determining wage-earning capacity in the fact that, in computing average weekly or monthly wages, such profits are generally excluded. See Larson § 60.12(d). This is true where, as in this case, the claimant is the sole or majority shareholder, officer or director of the employer corporation. See, Insurance Company of North America v. Industrial Comm'n, 116 Ariz. 21, 567 P.2d 337 (App. 1977) (profits or dividends not to be included in computing average weekly wage where they were not compensation for services actually performed for employer); Bolnick v. Industrial Comm'n, 81 Ill.2d 22, 39 Ill.Dec. 792, 405 N.E.2d 771 (1980) ($25,000.00 bonus received by sole shareholder/officer/director of employer corporation not to be included in computing average weekly wage). Likewise, where a claimant becomes self-employed in an unrelated business, income from such business is not to be included in computing his average weekly wage for purposes of determining his rate of compensation. See, Van Ness v. American Stores Co., 18 A.D.2d 746, 235 N.Y.S.2d 392 (1962); Holman Enterprise Tobacco Warehouse v. Carter, 536 S.W.2d 461 (Ky. 1976).
[5] While finding Florida Tile to be factually inapposite to this case, we find the facts and reasoning in Peters v. Metalcoat, Inc. of Florida, 9 FCR 102 (1974), cert. denied, 312 So.2d 197 (Fla. 1975), to be controlling. In Peters, as in this case, benefits were first voluntarily paid and were later inexplicably terminated, thus necessitating initiation of the claim process. The Commission found that the termination of benefits had

placed [claimant] in the position of being conscious of the possibility of such cut-off in the future and, thereby, being again subjected to expense and delay similar to that incurred in the past. Thus, we think the Judge was in error in refusing to make such adjudication with respect to permanent total disability benefits due the claimant.
9 FCR at 103.
[6] In Andrews, the Florida Supreme Court was asked to find that the deputy had erroneously failed to adjudicate the amount of benefits due when such benefits were concededly delinquent at the time of the hearing. The court agreed, concluding that

[w]hile the matter was before him and clearly supported by the record, the deputy commissioner should have adjudicated the rights of the petitioner reflected by the evidence.
92 So.2d at 523-524.
[1] Cf., Lister v. Walker, 409 So.2d 1153 (Fla. 1st DCA 1982).